IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DR. PETER A. MCCULLOUGH )<br> )<br>     Plaintiff, )<br> )<br>v. )<br> )<br> )<br>GANNETT CO., INC., )<br>BARTLESVILLE EXAMINER- )<br>     ENTERPRISE, )<br>ANUJ S. MALIK )<br> )<br>-and- )<br> )<br>ASCENSION ST. JOHN HOSPITAL )<br> )<br>     Defendants. )<br>_____) | Case No. 1:22-cv-1099<br><br>**TRIAL BY JURY<br>IS DEMANDED** |

# **COMPLAINT**

Plaintiff, Dr. Peter A. McCullough ("Dr. McCullough"), by counsel, files the following Complaint against Defendants, Gannett Co., Inc. ("Gannett"), Bartlesville Examiner-Enterprise ("BEE"), Anuj S. Malik ("Malik") and Ascension St. John Hospital ("Ascension"), jointly and severally.

Dr. McCullough seeks (a) compensatory damages and punitive damages in the total sum of **$10,000,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from October 2, 2021 to the date of Judgment, and (c) court costs – arising out of Defendants' defamation.

1

## I. **INTRODUCTION**

1. Dr. McCullough is an internist, cardiologist, and epidemiologist. He is board certified in internal medicine and cardiovascular disease and holds an additional certification in clinical lipidology. He has broadly published on a range of topics in medicine with > 1000 publications and > 660 citations in the National Library of Medicine. He practices both internal medicine, including the management of common infectious diseases, as well as the cardiovascular complications of both the viral infection and the injuries developing after the COVID-19 vaccine. Since the outset of the pandemic, Dr. McCullough has been a leader in the medical response to COVID-19. He published, *Pathophysiological Basis and Rationale for Early Outpatient Treatment of SARS-CoV-2 (COVID-19) Infection*, the first synthesis of sequenced multi-drug treatment of ambulatory patients infected with SARS-CoV-2 in the American Journal of Medicine ("AJM"). He has 46 peer-reviewed publications and has commented extensively on the medical response to the COVID-19 crisis. On November 19, 2020, Dr. McCullough testified before the United States Senate Committee on Homeland Security and Governmental Affairs. Throughout 2020 and 2021, he testified before the Texas Senate Committee on Health and Human Services, Colorado General Assembly, New Hampshire Senate, Pennsylvania Senate, and South Carolina Senate concerning many aspects of the pandemic response. Dr. McCullough has had thirty (30) months of dedicated academic and clinical experience in combating the SARS-CoV-2 virus. He has reviewed thousands of reports, participated in scientific congresses, group discussions, and press releases. On January 24, 2022, Dr. McCullough co-moderated and testified in

the U.S. Senate Panel "*COVID-19: A Second Opinion*" chaired by Senator Ron Johnson. Dr. McCullough is considered one of the world's leading experts on COVID-19.

2. In October 2021, Defendants broadly attacked and defamed Dr. McCullough in a series of articles published in Virginia and throughout the United States. Defendants falsely accused Dr. McCullough of misinformation, disinformation, dishonesty, medical malpractice and imputed to him unfitness to practice medicine.

3. In this action, Dr. McCullough seeks presumed damages, actual damages, special damages and punitive damages as a result of Defendants' defamation.

## II. PARTIES

4. Dr. McCullough is a citizen of Texas.

5. Defendant Gannett is a Delaware corporation with its headquarters and principal place of business in McLean, Virginia. Gannett is the country's largest newspaper chain. It publishes USA Today. The articles at issue in this case, identified below, were published and read in Virginia, where Dr. McCullough suffered substantial damage. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) ("[f]alse statements of fact harm both the subject of the falsehood *and* the readers of the statement … The tort of libel is generally held to occur wherever the offending material is circulated.").

6. Defendant BEE is owned by Gannett and is part of the USA Today network. At all times relevant to this action, Gannett controlled the process pursuant to which the offending articles were reported, edited and published, including the code of ethics and standard of care applicable to BEE's conduct.

7. Defendant Malik is a citizen of Oklahoma. Malik works for Ascension, a healthcare organization located in Oklahoma, or one of Ascension's affiliated practices and hold's privileges at Ascension and with those affiliations. On the internet and elsewhere, Malik associated his views with Ascension. In reaching out to Gannett and BEE, Malik acted as an agent of Ascension within the scope of his employment and in pursuit of Ascension's business. Malik and Ascension published false statements about Dr. McCullough to Gannett and BEE that Malik and Ascension knew would be published and circulated in Virginia.

### III. JURISDICTION AND VENUE

8. The United States District Court for the Eastern District of Virginia has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1332 (Diversity). The parties are citizens of different States. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9. Gannett and BEE are at home in Virginia and are subject to general personal jurisdiction in Virginia. Malik and Ascension are subject to the Court's specific personal jurisdiction. Malik and Ascension are subject to long-arm jurisdiction and have sufficient minimum contacts with Virginia such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process Clause of the United States Constitution.

10. Venue is proper in this Court pursuant to Title 18 U.S.C. §§ 1391(b)(1) and (b)(2). Defendants are subject to personal jurisdiction in Virginia. The statements at issue were intentionally published in and throughout Virginia, including in the Eastern District, where Dr. McCullough suffered substantial injury.

## IV. STATEMENT OF MATERIAL FACTS

11. On October 2, 2021, Gannett and BEE published an article entitled, "**Texas doctor critical of COVID-19 vaccines to speak at Bartlesville Community Center**". [https://www.examiner-enterprise.com/story/news/2021/10/02/texas-doctor-critical-science-covid-19-vaccines-speak-bcc/5902300001/ (the "Article")]. The Article includes a statement by Malik and Ascension that Dr. McCullough's views on vaccine safety and early treatment of COVID-19 are "dangerous to the public and pure quackery".[1] In the Article, Malik and Ascension falsely accuse Dr. McCullough of spreading disinformation about the vaccines. They state that Dr. McCullough is "pathological" and that he was "killing people" in October 2021 by causing them to remain unvaccinated.

12. On October 6, 2021, Gannett and BEE published a second article entitled, "**Doctor fired for spreading COVID misinformation finds supportive crowd in Bartlesville**". [https://www.examiner-enterprise.com/story/news/2021/10/06/doctor-fired-baylor-spreading-covid-19-misinformation-finds-supportive-crowd-bartlesville/5995698001/ (the "Second Article")]. In the Second Article, Gannett and BEE falsely state that Dr. McCullough was "fired" from several medical centers and

---

[1] A "quack" is an "an ignorant, misinformed, or dishonest practitioner of medicine". [*See, e.g.,* https://www.merriam-webster.com/dictionary/quack; *see also* http://www.oxforddictionaries.com/definition/english/quack (defining "quack" as "[a] person who dishonestly claims to have special knowledge and skill in some field, typically medicine")]; Restatement (Second) of Torts 573, comment c ("Statements that a physician is a drunkard or a quack, or that he is incompetent or negligent in the practice of his profession, are actionable."); *id. Barrett v. Rosenthal*, 40 Cal.4th 33, 51 Cal.Rptr.3d 55, 146 P.3d 510, 529 (2006) (doctors who claimed defamation in connection with actions of alternative health proponent, who had posted messages to newsgroups on the Internet referring to doctors as "quacks" were limited to pursuing actions against originators of allegedly defamatory Internet publications).

universities "for spreading COVID misinformation".[2]  Gannett and BEE further falsely state that Dr. McCullough is "largely discredited by the scientific community for his assertions that the COVID-19 vaccines are unsafe and that early treatment options have been suppressed".  In the Second Article, Gannett and BEE republished a statement by Malik and Ascension that accused Dr. McCullough of being "a modern-day quack".  Gannett and BEE misrepresented that Dr. McCullough made "multiple claims that are largely uncorroborated [and disproven] by the scientific community"; that Dr. McCullough misstated that "15,937 Americans have died after taking the vaccine"; and that Dr. McCullough "blatantly" misstated that there is not a vaccine safety board.  Gannett and BEE falsely opined that there was "likely a good reason" to believe that Dr. McCullough risked losing his "certification" from the American Board of Internal Medicine.  Finally, Gannett and BEE republished Malik and Ascension's false statement that Dr. McCullough's claims "fail to meet the standard of what is true".

13.     Both the Article and Second Article were immediately understood by readers to convey a defamatory meaning about Dr. McCullough.  The language in the Articles injured Dr. McCullough's reputation, held him up to scorn, shame, ridicule, and contempt, and rendered him infamous, odious, and ridiculous in the eyes of readers, *e.g.*:

---

[2]     According to the United States Department of Homeland Security ("DHS"), "misinformation" is "false information shared with others without the intent to mislead."  "Disinformation", by comparison, is "manufactured information that is deliberately created or disseminated with the intent to cause harm." https://www.dhs.gov/sites/default/files/publications/ia/ia_combatting-targeted-disinformation-campaigns.pdf, p. 4].  According to DHS, the spread of misinformation has helped to create a heightened terrorist threat to the United States homeland. [https://www.dhs.gov/sites/default/files/ntas/alerts/22_0207_ntas-bulletin.pdf; https://www.cisa.gov/mdm; https://dailycaller.com/2022/02/09/department-homeland-security-misinformation-covid-19-election-fraud-possible-terrorist-threat/].

https://twitter.com/Emerson_Gravely/status/1478313481438994434
("McCullough lies")

https://twitter.com/kohenari/status/1454063858100969481
("The guy they're featuring is a totally discredited quack who was fired for continually spreading Covid misinformation");

https://twitter.com/Welches/status/1527722282772307969
("Oh great, the … doctor who was fired for constantly spreading blatantly made up information");

https://twitter.com/chucktortellini/status/1508792188909633538
("Peter Mccullough is a quack");

https://twitter.com/Limerick1914/status/1471029327949139971
("If you can read you have the credentials to see that this individual is a grifter and a conspiracy theorist.  It's also likely that his continued spreading of blatant disinformation will eventually lead to his decertification as a doctor");

https://twitter.com/SigmaBetaZed/status/1473104252662960131
(Dr. McCullough has "seemingly gone off the rails");

https://twitter.com/dr_salim_MD/status/1471099247097532421
("Peter is seducing people to get a deadly #covid virus, deal with consequences including death");

https://twitter.com/LucyAppa/status/1474994355589029890
("One of the finest epidemiologists in the US?  He's a cardiologist who was fired from his job for spreading lies about COVID");

https://twitter.com/FTR83089462/status/1558669435396833281
("Dr Peter McCullough is a liar.  The AMA should have revoked license by now for the lies about the virus that he has not only told – but published");

https://twitter.com/center4inquiry/status/1446486682753175560
("Watch out for this guy, Texas cardiologist Peter McCullough, fired for pushing anti-vaxxer misinformation.  He's now a big hero to the reality-denial crowd.  Dr. Anuj Malik called him a 'politically-motivated, ideological speech by a modern-day quack'").

14.     Defendants' false and defamatory statements injured Dr. McCullough's reputation and business.   Dr. McCullough lost numerous business opportunities, including speaking engagements, and substantial consulting income.   Media outlets

7

cancelled appearances due to the defamation, and potential business partners stepped back because of the reputational risk created by Defendants. Dr. McCullough's ability to treat patients was severely impaired. Dr. McCullough felt insulted, humiliated and embarrassed when he saw/read the false statements contained in the Article and Second Article. He continuously suffers public shame, ridicule, emotional distress, anxiety, insecurity, fear for his safety and the safety of family members, fear that the defaming remarks have reached family, friends, colleagues and other members of the public beyond the medical community, fear that he has lost standing and credibility in the community, fear that he will never be able to clear his name, and injury to his reputation.

## COUNT I – DEFAMATION

15. Dr. McCullough restates paragraphs 1 through 14 of this Complaint, and incorporates them herein by reference.

16. Gannett, BEE, Malik and Ascension made, published and republished numerous false factual statements of fact and actionable opinions of and concerning Dr. McCullough. These statements and opinions are detailed verbatim above. Defendants published the false statements and actionable opinions without privilege of any kind.

17. Comparing the false statements to the truth, it is beyond peradventure that Defendants' statements are materially false and, in some cases, entirely false. *Compare Nunes v. W.P. Company*, 2021 WL 3550896, at * 4 (D. D.C. 2021) ("A reasonable juror could conclude that there is a material difference between stating that Nunes had made a claim supported by evidence (that the Obama administration had undertaken intelligence activities related to individuals involved in the Trump campaign) and stating that Nunes had made a baseless claim (that the Obama administration had wiretapped Trump

Tower). A reasonable juror could therefore conclude that the article was materially false because it stated that Nunes had made such a baseless claim (when he had not)."); *see also Bustos v. A&E Networks*, 646 F.3d 762, 767 (10th Cir. 2011) (Gorsuch, J.) ("Comparing the challenged defamatory statement (membership in the Aryan Brotherhood) to the truth (conspiring with and aiding and abetting the Aryan Brotherhood), we cannot see how any juror could find the difference to be a material one—that is, likely to cause a reasonable member of the general public to think significantly less favorably of Mr. Bustos").

18. The false statements are defamatory *per se*. The statements accuse and impute to Dr. McCullough unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment, including professional incompetence, malpractice, disinformation, deception, misinformation, lack of ethics, lack of integrity and lack of veracity. The statements severely prejudice Dr. McCullough in his profession as a medical doctor and consultant.

19. By publishing the statements to Gannett's online subscribers, advertisers and readers in Virginia and elsewhere in the United States, Gannett, BEE, Malik and Ascension knew or should have known that the statements would be republished over and over by third-parties to Dr. McCullough's detriment. Republication was the natural and probable consequence of Defendants' actions and was actually and/or presumptively authorized by Defendants. In addition to their original publications, Defendants are liable for the millions of third-party republications of the false and defamatory statements within the past year under the republication rule.

20.    Gannett, BEE, Malik and Ascension published the false and defamatory statements with actual knowledge that they were false or with reckless disregard for whether they were false.  Defendants acted with actual malice and reckless disregard for the truth for the following reasons:

   a.    Given Dr. McCullough's credentials and stature in the medical community as of October 2021 (which was researched by and well-known to each Defendant), Defendants' scandalous and egregiously insulting statements about Dr. McCullough were so inherently improbable that only a reckless person would have put the statements in circulation. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, … when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation."); *US Dominion, Inc. v. Powell*, 554 F.Supp.3d 42, 63 (D. D.C. 2021) ("a reasonable juror could conclude that the existence of a vast international conspiracy that is ignored by the government but proven by a spreadsheet on an internet blog is so inherently improbable that only a reckless man would believe it.").

   b.    Gannett, BEE, Malik and Ascension knew the statements were false and harbored serious doubts as to the veracity of the statements.  Many of the statements are directly contradicted by peer-review studies and published research in Defendants' possession, demonstrating that the statements in the Article and Second Article are knowingly false.  Defendants fabricated the statements and made up facts out of whole cloth. *St. Amant*, 390 U.S. at 732 ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant [or] is the product of his imagination"); *Miller v. Watkins*, 2021 WL 924843, at * 18 (Tex App.

2021) ("If Miller indeed fabricated her allegations, then she by definition entertained serious doubts about them and had a high degree of awareness of the statements' falsity").

        c.      Prior to publication, Gannett, BEE, Malik and Ascension harbored an institutional hostility, hatred, extreme bias, spite and ill-will towards Dr. McCullough. This bias and prejudice motivated Defendants to publish the intentionally false statements about Dr. McCullough. Defendants intended to inflict harm through knowing or reckless falsehoods. *Don King Productions, Inc. v. Walt Disney Co.*, 40 So.3d 40, 45 (Fla. 4th DCA 2010) ("[a]n intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood.") (citing *Garrison v. Louisiana*, 379 U.S. 64, 73 (1964)); *Cochran v. Indianapolis Newspapers, Inc.*, 175 Ind.App. 548, 372 N.E.2d 1211, 1221 (1978) (evidence of ill will creates jury question on actual malice where "[t]here are no facts or statements of record which even remotely support" the defamatory implication at issue); *see Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 315 fn. 19 (5th Cir. 1995) ("[E]vidence of ill will can often bolster an inference of actual malice.").

        d.      Gannett and BEE intentionally abandoned all journalistic standards and integrity, including their own code of ethics, in publishing and republishing the false statements. *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 161 (1967) ("Where a publisher's departure from standards of press responsibility is severe enough to strip from him the constitutional protection our decision acknowledges, we think it entirely proper for the State to act not only for the protection of the individual injured but to safeguard all those

similarly situated against like abuse"). Gannett and BEE did not seek the truth or report it. They betrayed the truth for the sake of their systemic bias against Dr. McCullough. Rather than minimize harm, Defendants immediately set out to inflict maximum pain and suffering on Dr. McCullough in order to harm his reputation. Defendants published the statements in the broadest manner possible, for the sole purpose of injuring Dr. McCullough's reputation. They refuse to be accountable; refuse to acknowledge their mistakes; and, of course, refuse to apologize. As a sure sign of their actual malice, Defendants did not even bother to contact Dr. McCullough for comment prior to publication. *Project Veritas v. New York Times*, Case 63921/2020 (Westchester County Mar. 18, 2021) (Opinion & Order, p. 13) (one of the reasons the New York Times was guilty of actual malice was that it intentionally declined to seek comment from the plaintiff prior to publication, which "blatantly violated NYT's own published policies and ethical guidelines".).

21. As a direct result of Gannett, BEE, Malik and Ascension's defamation, Dr. McCullough suffered presumed damages, actual damages and special damages, including, but not limited to, loss of income, impaired future earnings and career damage, insult, pain, embarrassment, humiliation, mental suffering (past and future), injury to his reputation (past and future), costs and other out-of-pocket expenses, in the amount of $10,000,000.00 or such greater sum as is determined by the Jury.

Dr. McCullough alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession. Dr. McCullough believes that substantial additional evidentiary support, which is in the exclusive possession of Defendants, their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Dr. McCullough reserves his right to amend this Complaint upon discovery of additional instances of Defendants' wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Dr. McCullough respectfully requests the Court to enter Judgment against Defendants, jointly and severally, as follows:

A. Compensatory damages in the amount of $10,000,000.00;

B. Punitive damages in the maximum amount allowed by law;

C. Prejudgment interest on the principal sum awarded by the Jury at the maximum rate allowed by law;

D. Postjudgment interest at the maximum rate allowed by law;

E. Costs and other recoverable amounts as allowed by law;

F. Such other relief as is just and proper.

## TRIAL BY JURY IS DEMANDED

DATED: September 26, 2022

DR. PETER A. MCCULLOUGH


By:   <u>*/s/ Steven S. Biss*</u>
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone: (804) 501-8272
      Facsimile: (202) 318-4098
      Email: stevenbiss@earthlink.net

*Counsel for the Plaintiff*