**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

DR. PETER A. MCCULLOUGH,

     *Plaintiff,*

v.

GANNETT CO., INC., et al.,

     *Defendants.*

Case No. 1:22-cv-1099 – RDA-JFA

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Shirin Afsous (VSB No. 89999)
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102
Tel: (703) 749-1300
Fax: (703) 749-1301
Email: afsoussh@gtlaw.com

Michael A. Pusateri (*pro hac vice forthcoming*)
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington DC 20037
Tel: (202) 331-3100
Fax: (202) 331-3101
pusaterim@gtlaw.com

Michael J. Grygiel (*pro hac vice forthcoming*)
Cynthia E. Neidl (*pro hac vice forthcoming*)
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, NY 12207
Tel: (518) 689-1400
Fax: (518) 689-1499
Email: grygielm@gtlaw.com
    neidlc@gtlaw.com

*Counsel for Defendants Gannett Co., Inc., and*
*Bartlesville Examiner-Enterprise (a non-juridical entity)*

## TABLE OF CONTENTS

_Toc121469596PRELIMINARY STATEMENT ............................................................ 1

STATEMENT OF FACTS ........................................................................................... 3

    A.    The Parties. ................................................................................... 3

    B.    COVID-19. .................................................................................. 4

    C.    Dr. Malik Opines On Dr. McCullough's COVID-19 Anti-Vaccination Campaign. ................................................................. 4

        1.    The First Article. .................................................................... 4

        2.    The Second Article. ................................................................ 5

ARGUMENT ............................................................................................................. 7

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER *BEE* .................................. 7

    A.    Plaintiff Cannot Establish General Personal Jurisdiction over *BEE*. ........................... 7

    B.    Plaintiff Does Not Even Attempt To Allege Specific Personal Jurisdiction Over *BEE*. ......................................................... 8

II.    PLAINTIFF SUED THE WRONG DEFENDANT ............................................................ 9

III.    STANDARD OF REVIEW ....................................................................................... 12

IV.    IN THE ALTERNATIVE, CERTAIN STATEMENTS COMPLAINED OF ARE NOT ACTIONABLE BECAUSE THEY ARE TRUE ................................................. 14

V.    IN THE ALTERNATIVE, MOST OF THE CHALLENGED STATEMENTS ARE CONSTITUTIONALLY PROTECTED OPINIONS ........................................... 16

    A.    This Court Cannot Decide Scientific Truth In a Defamation Action. ........................ 16

    B.    The Use of Rhetorical Hyperbole and Exaggerated, Figurative Language Signals Protected Opinion. ............................................... 20

    C.    The Complaint Challenges Comments That Are Classic, Nonactionable Expressions of Opinion Based on Disclosed Facts. ............................ 22

VI.    IN THE ALTERNATIVE, AS A PUBLIC FIGURE, PLAINTIFF WAS REQUIRED — BUT FAILED — PLAUSIBLY TO ALLEGE ACTUAL MALICE ................................. 26

    A.    As the Complaint's Allegations Establish, Plaintiff Is a Limited Purpose Public Figure Under the First Amendment. ............................. 26

        1.    The Articles reported on a pre-existing public controversy. ............................... 28

        2.    Dr. McCullough played a significant role in that controversy. .......................... 29

3.      Access to Channels of Effective Communication. ............................................ 30

4.      Plaintiff's retention of public-figure status. ...................................................... 31

B.      Plaintiff Has Not and Cannot Adequately Plead "Actual Malice" As To the
        Challenged Statements............................................................................................ 32

1.      The Complaint's conclusory allegations are insufficient to demonstrate
        actual malice. ...................................................................................................... 34

2.      "Inherently improbable." .................................................................................... 35

3.      Contradicted by other source materials............................................................... 36

4.      "Institutional bias." ............................................................................................ 37

5.      Professional standards and ethics (negligence). ................................................. 38

6.      Failure to contact Plaintiff. ................................................................................. 38

VII.    IN THE ALTERNATIVE, DEFENDANTS ARE IMMUNIZED FROM LIABILITY FOR
        DEFAMATION UNDER VIRGINIA'S ANTI-SLAPP STATUTE................................... 39

CONCLUSION.......................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AdvanFort Company v. The Maritime Executive, LLC*,
   2015 U.S. Dist. LEXIS 99208 (E.D. Va. July 28, 2015) .........................................................40

*Albright v. Attorney's Title Insurance Fund*,
   504 F. Supp. 2d 1187 (D. Utah 2007) ...................................................................................12

*Allen v. Beirich*,
   2021 U.S. App. LEXIS 20547 (4th Cir. 2021) .................................................................16, 22

*Arthur v. Offit*,
   2010 WL 883745 (E.D. Va. Mar. 10, 2010) ....................................................................16, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................................... *passim*

*Barry v. Novartis Pharmaceuticals  Corp.*,
   2022 U.S. Dist. LEXIS 116391 (E.D. Va. June 30, 2022) ........................................................3

*Barzilay v. City of New York*,
   2022 WL 265719 (S.D.N.Y. July 8, 2022) ...........................................................................29

*Fidrych v. Marriott International, Inc.*,
   952 F.3d 124 (4th Cir. 2020) ..................................................................................................8

*Bell Atlantic Corporation v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................ *passim*

*Bernstein v. O'Reilly*,
   2019 WL 10995111 (S.D.N.Y. Mar. 5, 2019) ......................................................................11

*Besen v. Parents & Friends of Ex-Gays, Inc.*,
   2012 WL 1440183 (E.D. Va. Apr. 25, 2012) .........................................................28, 31, 34

*Bills v. Sunshine Wireless Company*,
   824 F. Supp. 60 (E.D. Va. 1993) .....................................................................................14, 15

*Biospherics, Inc. v. Forbes, Inc.*,
   151 F.3d 180 (4th Cir. 1998) ..........................................................................16, 21, 23, 25

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2015 (2016).......................................33

*Biro v. Condé Nast*,
   2014 WL 4851901 (S.D.N.Y. Sept. 30, 2014), *aff'd in part*, 807 F3d 541 (2d
   Cir 2015), and *aff'd*, 622 Fed Appx 67 (2d Cir 2015) ...........................................................14

*Bose Corp. v. Consumers Union Of United States, Inc.*,
   466 U.S. 485 (1984)............................................................................................................34

*Brimelow v. New York Times Company*,
   2021 U.S. App. LEXIS 31672 (2d Cir. Oct. 21, 2021)..........................................................38

*Bristol-Myers Squibb v. Superior Court of California*,
   137 S. Ct. 1773 (2017)..........................................................................................................7

*Brown v. Skyline Furniture*,
   2017 WL 2536590 (N.D. Ill. June 6, 2017) ........................................................................12

*CACI Premier Technology, Incorporatedv. Rhodes*,
   536 F.3d 280 (4th Cir. 2008) .........................................................................................16, 33

*Carr v. Forbes, Inc.*,
   259 F.3d 273 (4th Cir. 2001) ...........................................................................13, 27, 29, 33

*Catalina Marketing International, Inc. v. Coolsavings.Com, Inc.*,
   2003 WL 21542491 (N.D. Ill. July 3, 2003)........................................................................12

*Chapin v. Knight-Ridder, Inc.*,
   993 F.2d 1087 (4th Cir. 1993) .......................................................................................16, 23

*Cheng v. Neumann*,
   51 F.4th 438 (1st Cir 2022)..................................................................................................25

*Church of Scientology International v. Daniels*,
   992 F.2d 1329 (4th Cir. 1993) ..............................................................................................38

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)................................................................................................................8

*D.A.R.E. America v. Rolling Stone Magazine*,
   101 F. Supp. 2d 1270 (C.D. Cal. 2000), *aff d*, 270 F.3d 793 (9th Cir. 2001) ........................39

*Deripaska v. The Associated Press*,
   282 F. Supp. 3d 133 (D.D.C. 2017)......................................................................................30

*Dilworth v. Dudley*,
   75 F.3d 307 (7th Cir. 1996) ..................................................................................................32

*Dolco Investments, Ltd. v. Moonriver Development, Ltd.*,
   486 F. Supp. 2d 261 (S.D.N.Y. 2007)....................................................................................9

*Eastman Chemical Company v. Plastipure, Incorporated*,
   775 F.3d 230 (5th Cir. 2014) ................................................................................................20

*Edwards v. Schwartz*,
   378 F. Supp. 3d 468 (W.D. Va. 2019) ..................................................................................17

*Fairfax v. CBS Broadcasting Inc.*,
   534 F. Supp. 3d 581 (E.D. Va. 2020) ...................................................................................39

*Fairfax v. CBS Corp.*,
   2 F.4th 286  (4th Cir. 2021) ....................................................................................................3

*Fortson v. Colangelo*,
   434 F. Supp. 2d 1369 (S.D. Fla. 2006) .................................................................................21

*Franchini v. Bangor PublishingCo.*,
2020 WL 1879012 (D. Me. Apr. 15, 2020) ............................................................. 37

*Garrison v. Louisiana*,
379 U.S. 64 (1964) ................................................................................................... 33

*Geller v. de Blasio*,
2020 WL 2520711 (S.D.N.Y. May 18, 2020), *app. withdrawn*, 2020 WL
4760303 (2d Cir. June 8, 2020) ............................................................................... 29

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ............................................................ 10, 26, 27, 31, 32

*Goldman v. Barrett*,
2016 U.S. Dist. LEXIS 145786 (S.D.N.Y. 2016) ................................................... 22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ............................................................................................ 7, 8

*Gorran v. Atkins Nutritionals, Inc.*,
464 F. Supp. 2d 315 (S.D.N.Y. 2006) ................................................................... 17

*Grayson v. Anderson*,
816 F.3d 262 (4th Cir. 2016) ................................................................................... 7

*Greene v. Mullis*,
829 F. App'x 604 (4th Cir. 2020) ............................................................................. 3

*Hanks v. WAVY Broadcasting, LLC*,
2012 WL 405065 (E.D. Va. Feb. 8, 2012) ............................................................. 34

*Harte-Hanks Communications, Inc. v. Connaughton*,
491 U.S. 657 (1989) ........................................................................................ 32, 38

*Haskins v. Washington Adventist Hospital*,
2012 U.S. Dist. LEXIS 3255 (E.D. Va. Jan. 11, 2012) ........................................... 7

*Hatfill v. The New York Times Company*,
488 F. Supp. 2d 522 (E.D. Va. 2007), *aff'd*, 532 F.3d 312 (4th Cir. 2008) .................... *passim*

*Horsley v. Rivera*,
292 F.3d 695 (11th Cir. 2002) ............................................................................... 22

*Hourani v. Psybersolutions LLC*,
164 F. Supp. 3d 128 (D.D.C. 2016) ................................................................... 28Re

*Immanuel v. CNN, Inc.*,
2022 U.S. Dist. LEXIS 135903 (S.D. Tex. Aug. 1, 2022) .............................. *passim*

*J.D. Marshall International, Inc. v. Redstart, Inc.*,
1989 WL 165070 (N.D. Ill. Dec. 29, 1989) ........................................................... 12

*Jankovic v. International Crisis Group*,
822 F.3d 576 (2016) ......................................................................................... 35, 38

*Lemelson v. Bloomberg L.P.*,
903 F.3d 19 (1st Cir. 2018) .................................................................................... 33

*Liberty Counsel Inc. v. GuideStar USA, Inc.*,
  737 F. App'x 171 (4th Cir. 2018) ......................................................................13

*Liberty Lobby, Inc. v. Anderson*,
  1991 WL 186998 (D.D.C. May 1, 1991)...........................................................36

*Lohrenz v. Donnelly*,
  223 F. Supp. 2d 25 (D.D.C. 2002), *aff'd*, 350 F.3d 1272 (2003).........................27, 32, 34, 39

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991)..........................................................................................14

*Mayfield v. NASCAR*,
  674 F.3d 369 (4th Cir. 2012) .........................................................................33, 35

*McDonald v. Wise*,
  769 F.3d 1202 (10th Cir. 2014) .........................................................................33

*McDougal v. Fox News Network, LLC*,
  489 F. Supp. 3d 174 (S.D.N.Y. 2020)...............................................................26

*McLaughlin v. Sullivan County Board of Education*,
  2021 WL 3744803 (E.D. Tenn. Aug. 24, 2021) ...............................................29

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ...........................................................................33

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)..........................................................................................20, 23

*Miller v. Transamerican Press, Inc.*,
  621 F.2d 721 (5th Cir. 1980) .............................................................................27

*Molock v. Whole Foods Market, Inc.*,
  297 F. Supp. 3d 114 (D.D.C. 2018).....................................................................8

*National Association for the Advancement of Colored Peoplev. Button*,
  371 U.S. 415 (1963)...........................................................................................32

*New Life Center, Incorporated v. Fessio*,
  2000 U.S. App. LEXIS 20894 (4th Cir. Aug. 16, 2000) ...............................27, 30, 31, 32, 38

*Newport News Holdings Corp. v. Virtual City Vision*,
  650 F.3d 423 (4th Cir. 2011) .............................................................................10

*New Wellington Financial Corp. v. Flagship Resort Development Corporation*,
  416 F.3d 290 (4th Cir. 2005) ...............................................................................7

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964).................................................................................. *passim*

*OAO Alfa Bank v. Center for Public Integrity*,
  387 F. Supp. 2d 20 (D.D.C. 2005).....................................................................28

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
  720 F.3d 490 (2d Cir. 2013)...............................................................................17

*Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.*,
  160 F.3d 170 (4th Cir. 1998) ...................................................................................9

*Oxycal Laboratories, Inc. v. Jeffers*,
  909 F. Supp. 719 (S.D. Cal. 1995).......................................................................17

*Parisi v. Sinclair*,
  845 F. Supp. 2d 215 (D.D.C. 2012) ......................................................................34

*Payoda, Inc. v. Photon Infotech, Inc.*,
  2015 WL 1325562 (N.D. Cal. March 24, 2015) ...................................................11

*Philadelphia Newspapers, Inc. v. Hepps*,
  475 U.S. 767 (1986)...............................................................................................14

*Pippen v NBCUniversal Media, LLC*,
  734 F.3d 610 (7th Cir. 2013) ................................................................................33

*Preston v. City Council of Petersburg*,
  2021 U.S. Dist. LEXIS 58519 (E.D. Va. Mar. 26, 2021) ......................................37

*Prince v. The Intercept*,
  2022 U.S. Dist. LEXIS 183551 (S.D.N.Y. Oct. 6, 2022) ......................................35

*Resolute Forest Products, Inc. v. Greenpeace International*,
  302 F.Supp.3d 1005 (N.D. Cal. 2017) ..................................................................17

*Reuber v. Food Chemical News, Inc.*,
  925 F.2d 703 (4th Cir. 1991) ........................................................................ *passim*

*Ryan v. Brooks*,
  634 F.2d 726 (4th Cir. 1980) ................................................................................33

*Scarborough v. Frederick Cnty.*,
  517 F. Supp. 3d 569 (W.D. Va. 2021) ...................................................................28

*Schnare v. Ziessow*,
  104 Fed. Appx. 847 (4th Cir. 2004)...............................................16, 21, 22, 23

*Snyder v. Phelps*,
  580 F.3d 206 (4th Cir. 2009), *aff'd on other grounds*, 562 U.S. 443 (2011)......................1, 20

*Spelson v. CBS, Inc.*,
  581 F. Supp. 1195 (N.D. Ill. 1984) .......................................................................22

*Spirito v. Peninsula Airport Commission*,
  350 F. Supp. 3d 471 (E.D. Va. 2018) ......................................................................3

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)...............................................................................................33

*Stern v. News Corporation*,
  2010 WL 5158635 (S.D.N.Y. Oct. 14, 2020) ........................................................11

*Susko v. Cox Enterprises, Inc.*,
  2008 WL 4279673 (N.D. W. Va., Sept. 16, 2008) .................................................11

*Tannerite Sports, LLC v. NBCUniversal News Group*,
    864 F.3d 236 (2d Cir. 2017)................................................................14

*Time, Inc. v. Hill*,
    385 U.S. 374 (1967)................................................................17

*Underwager v. Salter*,
    22 F.3d 730 (7th Cir. 1994) ................................................................19

*United States v. Bestfoods*,
    524 U.S. 51 (1998)................................................................9, 12

*United States v. Kolon Industries, Inc.*,
    926 F. Supp. 2d 794 (E.D.Va. 2013) ................................................................10

*Vitol, S.A. Ltd., v. Primerose Shipping Co.*,
    708 F.3d 527 (4th Cir. 2013) ................................................................9

*Waldbaum v. Fairchild Publications, Inc.*,
    627 F.2d 1287 (D.C. Cir. 1980)................................................................26, 27, 28

*Walden v. Fiore*,
    571 U.S. 277 (2014)................................................................7

*William v. AES Corp.*,
    28 F. Supp. 3d 553 (E.D. Va. 2014) ................................................................10

*Williby v. Hearst Corp.*,
    2017 WL 2929454 (N.D. Cal., July 10, 2017)................................................................11

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002) ................................................................7

*Zhang v. Regan*,
    2011 WL 1456188 (E.D. Va. Apr. 14, 2011) ................................................................34

**State Cases**

*Chaves v. Johnson*,
    230 Va. 112 (1985) ................................................................16

*Crosse v. BCBSD, Inc.*,
    836 A.2d 492 (Del. 2003) ................................................................10

*Khan v. New York Times Company*,
    710 N.Y.S.2d 41 (1st Dep't 2000) ................................................................9

*Washington League for Increased Transparency & Ethics v. Fox News*,
    2021 WL 3910574 (Wash. Ct. App. Aug. 30, 2021)................................................................4, 29

*Yeagle v. Collegiate Times*,
    255 Va. 293 (1998) ................................................................20

**State Statutes**

Va. Code § 8.01-223.2 ...................................................................................................3

Va. Code § 8.01-223.2(A) (2020) .................................................................................39

Va. Code § 8.01-223.2(B) ............................................................................................40

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................. *passim*

U.S. Const. amend. XIV ...........................................................................................1, 7

Defendants Gannett Co., Inc., ("Gannett") and the *Bartlesville Examiner-Enterprise* ("*BEE*," a non-juridical entity) respectfully submit this memorandum in support of their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) or, in the alternative, 12(b)(6).

## PRELIMINARY STATEMENT

This case tests a core feature of our democracy: the ability to participate in debate on a public issue without fear of punishment under state tort law. It arises from an appearance at a community center in Bartlesville, Oklahoma, by Plaintiff Dr. Peter A. McCullough, a nationally prominent opponent of the use of vaccines to combat the coronavirus pandemic, in which he advocated early outpatient treatment of patients through multi-drug regimens. *BEE*'s reporting focused squarely — and indisputably accurately — on claims Dr. McCullough made during that presentation attacking government-sponsored vaccination programs. All of *BEE*'s commentary on Dr. McCullough's remarks was explicitly predicated on scientific studies and government statistics attributed to an infectious disease expert who has treated thousands of COVID-19 patients in Oklahoma and who vehemently disagreed with Dr. McCullough's controversial approach. Nonetheless, Dr. McCullough brings a claim for defamation, which collides with the established principle that "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (citation omitted). If allowed to proceed, the Complaint would erode the strong protection derived from those fundamental values, restrict the "breathing space" constitutionally afforded the two newspaper articles at issue, and abandon the First Amendment by placing off limits speech concerning a matter of paramount public importance.

First, even before reaching the constitutional deficiencies of Plaintiff's claim, the Complaint should be dismissed for lack of personal jurisdiction over *BEE*, which is published and circulated in Oklahoma. The Constitution's Due Process Clause does not permit this Court to exercise personal jurisdiction based upon the Complaint's conclusory allegation that *BEE* is "at home" in Virginia, which

does not come remotely near demonstrating the constant and pervasive contacts required for general jurisdiction — the sole jurisdictional basis relied on by Plaintiff.

Second, and again without need of considering the merits, the Complaint has improperly named Gannett as a defendant, ignoring fundamental principles that establish a parent corporation cannot be liable as a matter of law for the allegedly defamatory articles published by a subsidiary. Apparently to indulge his choice of forum, Plaintiff has gone to great lengths to sue the wrong entity. This flagrant forum shopping — enabling Plaintiff's Virginia-based counsel to litigate in his backyard — only makes sense when viewed through the lens of Plaintiff's obvious litigation objective: to hold the press responsible for his alleged harms, self-inflicted through his injection of himself into one of this century's most important public health controversies.

Third, and in the alternative, the Complaint should be dismissed because Dr. McCullough has not plausibly alleged the requisite elements of a defamation claim:

- The factual statements in the news articles challenged by Plaintiff are substantially true. Dr. McCullough really — and indisputably — said exactly what *BEE* reported he said.

- The truth of scientific claims about the safety and efficacy of COVID-19 vaccinations is a matter for public discussion, and is not an appropriate inquiry for a defamation action.

- To the extent *BEE* published statements from a local medical expert that criticized the anti-vaccination campaign championed by Dr. McCullough and called out his credibility for promoting dubious alternative treatment theories, those statements are expressions of opinion based on fully disclosed facts or are rhetorical hyperbole, and are absolutely privileged under the First Amendment.

- Dr. McCullough, a limited purpose public figure, failed to plead that *BEE*'s news articles were published with actual malice, precluding liability for defamation.

In the final analysis, Dr. McCullough is asking this Court to resolve the public debate on the use of vaccines to treat the pandemic that has ravaged our country for nearly three years and do so in a way that awards him, personally, $10,000,000. But it is not the proper role of this or any court to determine

2

the truth or falsity of medical or scientific claims, and it is certainly not the Court's role to declare one doctor a "winner" entitled to windfall damages.  Reliable information from trustworthy sources that impeaches the methods and objectivity of scientific researchers is inseparable from the merits and legitimacy of their advocacy in the public scientific debates in which they participate.  This is a classic "SLAPP suit" (Strategic Lawsuit Against Public Participation) and the Complaint should be dismissed with prejudice for multiple reasons, including because Virginia's anti-SLAPP statute (Va. Code §8.01-223.2) immunizes Defendants from defamation liability.[1]

## STATEMENT OF FACTS[2]

### A.  **The Parties.**

Dr. McCullough is a physician who resides in Texas.  (Compl. ¶ 4)  He is a national "leader in the medical response to COVID-19," and has "commented extensively" on that crisis.  (*Id*. ¶ 1)

Gannett Co., Inc. is incorporated in Delaware and has its principal place of business in McLean, Virginia.  (Compl. ¶ 5)

---

[1]   An anti-SLAPP motion is being filed contemporaneously herewith on behalf of Defendants.

[2]   *BEE*'s two news Articles quoted and referenced in the Complaint may be considered by the Court in the full context of their publication on Defendants' motion to dismiss, and copies of the Articles are attached as Exhibits 1 and 2 to their counsel's Declaration.  *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir 2021) (in evaluating Rule 12(b)(6) motion, court considered two broadcasts alleged to be defamatory); *Spirito v. Peninsula Airport Comm'n*, 350 F. Supp. 3d 471, 486 (E.D. Va. 2018) (on motion to dismiss court may consider "documents quoted, relied upon, or incorporated by reference in the complaint" (citations omitted)).  In adjudicating the instant motion, the Court may also take judicial notice of such facts that are not subject to dispute because they are (1) generally known within the territorial jurisdiction of the Court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  FRE 201(b).  The official United States government document (Exhibit 3) submitted herewith by Defendants in support of this motion is therefore a proper subject of judicial notice, as are the court records from other litigation involving Plaintiff (Exhibits 4-5).  *Barry v. Novartis Pharms. Corp.*, 2022 U.S. Dist. LEXIS 116391, at *12 (E.D. Va. June 30, 2022) ("because these documents constitute FDA publications that the public can access via the FDA website, they satisfy Rule 201, and the Court will judicially notice them as it considers the Motion to Dismiss") (citation omitted); *Greene v. Mullis*, 829 F. App'x 604, 605 (4th Cir. 2020) ("We may . . . take judicial notice of matters of public record, including court orders and filings in [plaintiff]'s prior cases.").

*BEE* is a community newspaper serving Bartlesville, Oklahoma.  (Declaration of Kim Archer ("Archer Dec.") ¶ 3)  It is owned, operated, and published by DB Oklahoma Holdings, Inc., a Delaware corporation.  (*Id.*)  It is not distributed in Virginia, and its reporters are based in Oklahoma.  (*Id.* ¶ 8)

### B.  COVID-19.

In early 2020, the highly infectious disease COVID-19 began spreading rapidly throughout the United States, killing over a million people and forcing the closure of businesses and schools and the suspension of court proceedings.  *See Washington League for Increased Transparency & Ethics v. Fox News*, 2021 WL 3910574, at *1 (Wash. Ct. App. Aug. 30, 2021).  The local, state, and federal government responses to the resulting pandemic became the subject of extensive public debate, with particular focus being directed at potential treatments and prophylactic measures.

### C.  Dr. Malik Opines On Dr. McCullough's COVID-19 Anti-Vaccination Campaign.[3]

#### 1.  The First Article.

On October 2, 2021, *BEE* published a news article headlined "Texas doctor critical of COVID-19 vaccines to speak at Bartlesville Community Center" (the "First Article").  The First's Article's reportage included the following statements critical of Dr. McCullough's campaign against vaccination safety:

> "However, Dr. Anuj Malik, an infection disease physician at Ascension St. John, told [*BEE*] that 'these kinds of expressed views are dangerous to the public and pure quackery."
>
> "'There were more than six billion doses of all the vaccines combined given in the world, which means if there was some kind of terrible mortality or safety signal, we would have seen it,' he said."

(Grygiel Dec. ¶ 3, Ex. 1, p. 1)

---

[3]   The language quoted in this section is the actual language from *BEE*'s two news articles at issue, which are not attached to the Complaint.  Dr. McCullough extrapolates from or omits the language used by *BEE* and Dr. Malik in his Complaint, but the attached Exhibits provide the Court with the full context of the challenged publications.  *See* Exs. 1 and 2 to Grygiel Dec.

4

* * * *

> "'The governments of the world cannot get along on anything, why should they get along on vaccines?' Malik said. 'The World Health Organization, the CDC, the NIH, the European Centre for Disease Prevention and Control, everybody says the same thing about the vaccine. It's safe, it's effective, and the people who are spreading this information about it for what reason nobody can understand other than these people are pathological.  These people are killing people.'"

(*Id.* p. 2)

## 2.  The Second Article.

On October 6, 2021, *BEE* published a follow-up news article headlined "Dr. fired for spreading COVID misinformation finds supportive crowd in Bartlesville" (the "Second Article").  The Second Article's reportage included the following statements denouncing Dr. McCullough's disavowal of vaccines and promotion of alternative treatment protocols for the coronavirus:

> "Those gathered, including GOP and public officials, nurses, pharmacists and other concerned citizens, gave standing ovations during the presentation of Dr. Peter McCullough, a Dallas cardiologist who is largely discredited by the scientific community for his assertions that the COVID-19 vaccines are unsafe and that early treatment options have been suppressed."

> "While McCullough said that doctors were probably afraid to show up to the event, one of Oklahoma's top infectious disease physicians, Dr. Anuj Malik, director of infection prevention and control at Ascension St. John, said that the doctors he spoke to were not afraid to attend. They were just not interested in sitting through what would be seen as a 'politically-motivated, ideological speech by a modern-day quack.'"

(Grygiel Dec. ¶ 4, Ex. 2, p. 1)

* * * *

> "Throughout the evening, McCullough made multiple claims that are largely uncorroborated by the scientific community. Among them is that a person who has already had COVID-19 does not need the vaccine and that it can be harmful to those who already have natural immunity."

> "That, too, has been disproven. The U.S. Centers for Disease Control and Prevention maintains that the vaccine does provide protection and that research has not proven that having had the virus protects you from having it again."

(*Id.* p. 2)

* * * *

5

"One of McCullough's biggest claims of the night was that 15,937 Americans have died after taking the vaccine, which Malik said is taken completely out of context."

"This number is taken from the Vaccine Adverse Event Reporting System (VAERS), but the Centers for Disease Control and Prevention said that these reports are not proof that the vaccine caused the deaths. The FDA requires healthcare providers to report any deaths among people who received the vaccine to VAERS, even if it's unclear that the vaccine was the cause."

"McCullough also blatantly told the audience that there is not a vaccine safety board.  Yet Malik points to the Data and Safety Monitoring Board (DSMB) that oversaw the vaccine trials. The board included 11 experts from four countries who are not employed by government or pharma companies."

(*Id.*)

* * * *

"McCullough shared what he said was a threatening letter from the American Board of Internal Medicine warning that he could lose his certification for spreading misinformation."

"There is likely a good reason for his concern about losing certification.  A Dallas County Court granted a temporary restraining order against him in July on behalf of Baylor Scott & White Health for continuing to claim titles, including vice chief of internal medicine at Baylor University Medical Center, even after he was fired from Baylor in February."

(*Id*. p. 3)

* * * *

"[Dr. Malik] said McCullough likely wouldn't be risking losing certification if he had taken the logical path of seeking a grant to launch clinical trials on his drug recommendations for early treatment of COVID-19."

"'(McCullough's) claims fail to meet the standard of what is true.  None of his suggestions have been submitted to a clinical trial despite the fact that we are 20 months into this pandemic,' Malik said."

(*Id*. p. 4)

# ARGUMENT

## I.   THIS COURT LACKS PERSONAL JURISDICTION OVER *BEE*

Plaintiff cannot establish personal jurisdiction over *BEE*, an Oklahoma-based newspaper that has no relevant contacts with Virginia.  (Archer Dec. ¶¶ 3-8)  Plaintiff bears the burden of establishing personal jurisdiction.  *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).  Conclusory allegations insisting upon the Court's jurisdiction do not suffice.  *See Haskins v. Wash Adventist Hosp*., 2012 U.S. Dist. LEXIS 3255, at *4-5 (E.D. Va. Jan. 11, 2012).  Federal courts have limited jurisdiction and may only exercise personal jurisdiction in conformity with both state law and the Due Process Clause of the United States Constitution.  *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp*., 416 F.3d 290, 294 (4th Cir. 2005).

Because "Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause," "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (citations omitted). The Due Process Clause recognizes "general" jurisdiction over foreign corporations where their contacts with the forum jurisdiction "are so 'continuous and systematic' as to render them essentially at home in the forum state.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted).  Specific jurisdiction, on the other hand, depends on an "affiliation between the forum and the underlying controversy," but only where the claims arise from those contacts in the forum state. *Bristol-Myers Squibb v. Super. Ct.*, 137 S. Ct. 1773, 1776 (2017) (internal quotation marks and citation omitted); *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  The Complaint asserts only general jurisdiction, which does not exist over *BEE*.

### A.  Plaintiff Cannot Establish General Personal Jurisdiction over *BEE*.

It is undisputed and undisputable that *BEE* lacks any "continuous and systematic" contacts with Virginia.  *BEE* is a daily community newspaper published in Bartlesville, Oklahoma, by an Oklahoma

7

corporation.  (Archer Dec. ¶ 3)  *BEE* has a circulation of 2,716, comprised of residents of Bartlesville and surrounding communities.  (*Id.* ¶ 6)  *BEE* has no offices, operations, or employees in Virginia, circulates no newspapers there, and its employees do not travel to Virginia as part of their employment.  (*Id.* ¶ 8)  Other than *BEE*'s affiliation with Gannett, *BEE* has no connection with Virginia.

Plaintiff's conclusory allegation that *BEE* is "at home in Virginia and [is] subject to general personal jurisdiction in Virginia" (Compl. ¶ 9) must be disregarded.  Plaintiff fails to allege any facts that might support jurisdiction over *BEE*.  There is therefore no general personal jurisdiction over *BEE*.  *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 134 (4th Cir. 2020) (finding no general personal jurisdiction where the plaintiff offers nothing "that would distinguish" the defendant's relationship with the forum "from its relationship with any of the other states . . . where it is not incorporated or headquartered"); *cf. Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014) (noting that establishing general personal jurisdiction where a corporation is neither based nor incorporated would require an "exceptional case").

Plaintiff plainly has not alleged—and could never show—that *BEE* might be "fairly regarded as at home" in the Commonwealth of Virginia.  *See Goodyear*, 564 U.S. at 924.

**B.  Plaintiff Does Not Even Attempt To Allege Specific Personal Jurisdiction Over *BEE*.**

While Plaintiff purports to allege specific jurisdiction over the non-media Oklahoma defendants, Plaintiff only asserts general jurisdiction with respect to *BEE* and does not allege — even in conclusory terms — that *BEE* is subject to specific jurisdiction in Virginia.  (*See* Compl. ¶ 9)  Plaintiff's failure to do so is fatal.  *Cf. Molock v. Whole Foods Market, Inc.*, 297 F. Supp. 3d 114, 123 (D.D.C. 2018) ("The court need not address general jurisdiction here because Plaintiffs only contend that the court has specific jurisdiction over Defendants").

## II.      PLAINTIFF SUED THE WRONG DEFENDANT

Another threshold — and fundamental — problem with the Complaint is that Plaintiff has sued the wrong party.  Although a named defendant, Gannett did not publish either of the purportedly defamatory Articles.  (Archer Dec. ¶ 10)  Rather, the Articles were written, edited, and published by *BEE*, a community newspaper providing news coverage to a local readership in Bartlesville, Oklahoma.  (*Id*. ¶¶ 3-6)  As a separate corporate entity, Gannett is a sham defendant, joined only for Plaintiff's convenience.

In hope of securing a forum in Virginia, Plaintiff takes aim at Gannett because "Defendant BEE is owned by Gannett and is part of the USA Today network."  (Compl. ¶ 6)  But to implicate Gannett for its affiliate's publications, Plaintiff must do more than point to the parties' corporate relationship and declare his work done.

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51 (1998).  Thus, imposing alter ego liability must be undertaken "reluctantly and cautiously" and only in "extraordinary cases." *Vitol, SA Ltd., v. Primerose Shipping Co*., 708 F.3d 527, 534-44 (4th Cir. 2013).  The plaintiff bears the heavy burden of veil-piercing; conclusory allegations of domination fall far short. *See Dolco Inv. v. Moonriver Dev., Ltd*., 486 F. Supp. 2d 261, 272 (S.D.N.Y. 2007); *accord Ost-W.-Handel Bruno v. Project Asia Line, Inc*., 160 F.3d 170, 174 (4th Cir. 1998).  These principles apply with full force in the defamation context.  "It is axiomatic that a defendant cannot be held liable for a libelous statement that it did not write or publish." *Khan v. N.Y. Times Co.*, 710 N.Y.S.2d 41, 46 (1st Dep't 2000).

To state a claim under Delaware law[4] based on a veil-piercing theory, the plaintiff "must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003); *see also Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011) (holding that under Virginia law, a plaintiff may pierce the corporate veil only where there is both (1) a unity of interest and ownership and (2) use of the corporate form to perpetuate a fraud, crime, injustice, or abuse). Here Plaintiff has alleged no facts whatsoever that would allow the Court to disregard the corporate form, pierce the corporate veil, and impose liability on Gannett for its affiliate's reportage.

Lacking any facts that might give rise to veil-piercing, Plaintiff attempts to impose direct liability on Gannett through a single, conclusory allegation that "Gannett controlled the process pursuant to which the offending articles were reported, edited, and published, including the code of ethics and standard of care applicable to BEE's conduct." (Compl. ¶ 6) However, the Complaint includes no facts that support this assertion or that otherwise give rise to a plausible inference that Gannett is directly liable for the content of the Articles at issue. Indeed, Plaintiff did not and cannot allege that anyone from Gannett authored the challenged statements, reported on the conference where the statements were made, or was otherwise directly involved in the publication of the Articles. (Archer Dec. ¶ 10) *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) (holding that the First Amendment shields publishers from claims brought on a "strict liability" basis where those publishers are "without fault"). That Gannett — "the country's largest newspaper chain" (Compl. ¶ 5) — would "control" with an editorial straitjacket the "report[ing], edit[ing], and publi[cation]" process (*id.* ¶ 6) of an individual

---

[4]   "As a general proposition, 'the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation.'" *William v. AES Corp.*, 28 F. Supp. 3d 553, 562 (E.D. Va. 2014) (citing *United States v. Kolon Indus., Inc.*, 926 F. Supp. 2d 794, 814 (E.D.Va. 2013)). Gannett is a Delaware corporation. (Compl. ¶ 5)

community newspaper is too fanciful to accept. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that to survive a motion to dismiss, plaintiff's allegations must be facially plausible).

Moreover, Plaintiff's conclusory allegation that Gannett "controlled the process" of publication fails a matter of law. *Stern v. News Corp.*, 2010 WL 5158635, at *4 (S.D.N.Y. Oct. 14, 2020), *report and recommendation adopted*, 2010 WL 5158637 (S.D.N.Y. Dec. 16, 2010) (New Corporation was "not a proper party to Stern's defamation claims arising from the *New York Post* article because it does not publish the *Post* and cannot be held liable for the tortious acts of a subsidiary); *Williby v. Hearst Corp.*, 2017 WL 2929454, at *2 (N.D. Cal., July 10, 2017) (holding allegations that parent corporation "directed" subsidiary's "day-to-day operations" were insufficient without supporting facts to establish that parent should be liable for subsidiary's actions); *Susko v. Cox Enterprises, Inc.*, 2008 WL 4279673, at *8 (N.D. W. Va., Sept. 16, 2008) (dismissing defamation claims against corporate parent of publisher where the complaint failed to allege facts suggesting that parent "took any part in, or had any control over" the publication or statements at issue); *see also Payoda, Inc. v. Photon Infotech, Inc*., 2015 WL 1325562, at *3 (N.D. Cal. Mar. 24, 2015) ( "Plaintiff cites to no case law and performs no analysis of the facts to suggest that, absent proper alter ego allegations, Defendant, a purported subsidiary, can and should be held liable for the [allegedly defamatory] conduct of the parent."); *Bernstein v. O'Reilly*, 2019 WL 10995111, at *6 (S.D.N.Y. Mar. 5, 2019) (allegation that Fox News "published" Bill O'Reilly's comments to Sean Hannity failed to establish jurisdiction over the corporation because "the nexus between O'Reilly's statements on Sean Hannity's radio show and Fox is so attenuated that the statement cannot plausibly be attributed to the Fox Defendants").

Plaintiff's conclusory allegation concerning a shared "code of ethics and standard of care" (Compl. ¶ 6) similarly fails to "nudge" his veil-piercing theory "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). Even assuming Gannett has adopted

uniform journalistic standards for its newsrooms and satellite publications, such commonplace practice does not warrant veil-piercing.  *See Brown v. Skyline Furniture,* 2017 WL 2536590, at *3 (N.D. Ill. June 6, 2017) ("conclusory allegations" of shared resources do not establish an alter ego relationship for jurisdictional purposes); *Albright v. Attorney's Title Ins. Fund*, 504 F. Supp. 2d 1187, 1210 (D. Utah 2007) ("it is also common practice that certain functions, such as accounting and legal services, be shared within a corporate family.  Such shared functions are insufficient to pierce the corporate veil") (internal quotations and citation omitted); *Catalina Marketing Int'l, Inc. v. Coolsavings.Com, Inc.*, 2003 WL 21542491, at *5 (N.D. Ill. July 3, 2003) ("it is a common business practice" that does not warrant veil piercing for personal jurisdiction purposes "to monitor a subsidiary's performance . . . offer advice, and have general oversight of a subsidiary"); *J.D. Marshall Int'l Inc. v. Redstart, Inc.*, 1989 WL 165070, at *2 (N.D. Ill. Dec. 29, 1989) ("it is an economic fact of life that subsidiaries are subject to the overall direction of the parent, with a unity of interest and common objectives.  [This] does not establish the intrusive control of insubstantial subsidiaries by a parent which lead to a disregard of the separate corporate entities"); *see also Bestfoods*, 524 U.S. at 72 ("monitoring the subsidiary's performance" does not warrant veil-piercing).  Here, too, the Complaint's allegation falls short.

Plaintiff had no legitimate basis for naming Gannett as a defendant in this proceeding, and in any event, as explained below, Plaintiff's claims against Gannett and *BEE*  are barred by the First Amendment.

## III.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In other words, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550

U.S. at 570); *see also Liberty Counsel Inc. v. GuideStar USA, Inc.*, 737 F. App'x 171, 171 (4th Cir. 2018) (*per curiam*) (same).

The *Twombly/Iqbal* analysis requires courts to undertake a two-step process when reviewing motions to dismiss.  First, courts should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  Second, courts must address the remaining well-pleaded allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."  *Id*.  This step requires facts showing "more than a sheer possibility that a defendant acted unlawfully," and it is not enough for a complaint to plead facts that are "merely consistent" with liability.  *Id*. at 678.  Moreover, the court must not credit unreasonable inferences drawn by the plaintiff from pleaded facts.  *Id*.  Such a complaint "stops short of the line between possibility and plausibility of entitlement to relief."  *Twombly*, 550 U.S. at 557 (internal marks and citation omitted).

At the latter step, courts also must consider whether the inference of plausibility is "more likely explained by[] lawful . . . behavior."  *See Iqbal*, 556 U.S. at 680 (*citing Twombly*, 550 U.S. at 567).  If there is an obvious alternative, lawful explanation, the complaint fails to establish a plausible entitlement to relief.  *See, e.g., Twombly*, 550 U.S. at 567, 570.  There are strong First Amendment and public policy rationales underpinning the application of the plausibility standard to defamation complaints filed by public figures.  As the Fourth Circuit has explained, "[w]ere the press subject to suit every time it erred, it would decline to speak out without resorting to the sort of cumbersome due diligence common in security offerings.  For this reason, the Constitution provides the press with a shield whereby it may be wrong when commenting on acts of a public figure, as long as it is not intentionally or recklessly so."  *Carr v. Forbes, Inc.*, 259 F.3d 273, 283 (4th Cir. 2001).

In this case, based on the Complaint and the related materials the Court may properly consider, it is apparent that Plaintiff has not stated and cannot state any plausible claim for relief. Accordingly, his defamation claim should be dismissed with prejudice.

## IV. IN THE ALTERNATIVE, CERTAIN STATEMENTS COMPLAINED OF ARE NOT ACTIONABLE BECAUSE THEY ARE TRUE

When allegedly defamatory statements are published by a media defendant and involve matters of public concern, there can be no liability unless the statements are false. *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986); *Bills v. Sunshine Wireless Co.*, 824 F. Supp. 60, 64 (E.D. Va. 1993). Substantial, not literal, truth defeats a defamation claim. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) (the law "overlooks minor inaccuracies and concentrates on substantial truth"). Thus, to sustain a defamation claim, Plaintiff must plead facts that, if proven, would establish that the statements published by *BEE* were not substantially true.[5] *Hepps*, 475 U.S. at 776-77; *Bills*, 824 F.Supp. at 64. General allegations of an article's falsity do not supersede "specific factual statements" by an article's sources. *Biro v. Condé Nast*, 2014 WL 4851901, at *4 (S.D.N.Y. Sept. 30, 2014), *aff'd in part*, 807 F3d 541 (2d Cir 2015), *and aff'd*, 622 Fed Appx 67 (2d Cir 2015).

Plaintiff has not and cannot plausibly allege falsity with respect to the following factual statements because the Complaint, and the documents it incorporates, establish their substantial truth:

- Dr. McCullough was "fired" from several medical centers and universities "for spreading COVID misinformation." (Compl. ¶ 12; footnote omitted)

In a Declaration he filed in *BSWH/HTPN Scott & White Health and HealthTexas Provider Network v. Peter A. McCullough, M.D.*, Case No. DC-21-09699, Plaintiff stated:

I was formerly employed by Plaintiffs ("BSWH/HTPN"), who in my opinion decided to end my employment with them in February, 2021, due to my expressed opinions regarding Covid-19 in testimony before the U.S. Senate, my efficacious treatment of

---

[5]   Whether a statement is substantially true is an issue of law properly decided on a motion to dismiss. *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).

> Covid-19 patients, and for other inappropriate reasons.  Even though my employment was terminated, I still retained full medical staff privileges at two of BSWH/HTPN's facilities, and have continued to treat patients there.

(Grygiel Dec. ¶ 6, Ex. 4)  Thus, Plaintiff's own sworn averments establish the substantial truth of the Second Article's (1) headline "Doctor fired for spreading COVID misinformation" and (2) statement "he was fired from Baylor in February."  Although Plaintiff may disagree with the reasons for his termination, it nevertheless remains a true fact that he was discharged from employment owing to his controversial "opinions" about treating coronavirus patients.  *Bills*, 824 F. Supp. at 64 ("Because it has been established above that [plaintiff] has failed to introduce any evidence to prove that his firing was not related to his on-air deficiencies, [plaintiff] has not shown that defendant's statements to the newspaper were false.").

- Dr. McCullough "blatantly" misstated that there is not a vaccine safety board. (Compl. ¶ 12)

During his speech at the Bartlesville Community Center, Dr. McCullough denied the existence of a vaccine safety board, and the Complaint does not dispute that he made the statement.  Plaintiff said what he said; the Second Article accurately reported what he said; and the Complaint does not allege otherwise.  *Immanuel v. CNN, Inc.*, 2022 U.S. Dist. LEXIS 135903, at *9 (S.D. Tex. Aug. 1, 2022) ("Because CNN reported what Dr. Immanuel had said, primarily using her own words and videos, the reports that she had said what she said are not materially false and cannot be the basis of a claim for defamation.").  In contravention of Plaintiff's statement, the Second Article reported on the role of the Data and Safety Monitoring Board, composed of "11 experts from four countries who are not employed by government or pharma companies," that was responsible for overseeing the COVID-19 vaccination trials.  (Grygiel Dec. ¶ 4, Ex 2, p. 2)  Dr. McCullough's statement was therefore false — *i.e.*, it was a misstatement.  *Immanuel*, 2022 U.S. Dist. LEXIS 135903, at *7 ("There is no basis to infer that CNN's

coverage of Dr. Immanuel's speech was false.  CNN accurately reported what she had said and the positions that government agencies and others had taken on medication for COVID.").

## V.   IN THE ALTERNATIVE, MOST OF THE CHALLENGED STATEMENTS ARE CONSTITUTIONALLY PROTECTED OPINIONS

This Court should dismiss the Complaint on the additional ground that nearly all of the statements at issue contain commentary that constitutes nonactionable opinion.[6]  The First Amendment protects "statements that cannot reasonably be interpreted as stating actual facts about an individual." *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008); *Allen v. Beirich*, 2021 U.S. App. LEXIS 20547, at *8 (4th Cir. 2021) (same).  This determination requires consideration of "the circumstances in which the statement is made," *Schnare v. Ziessow*, 104 Fed. Appx. 847, 851 (4th Cir. 2004), including the "context and tenor of the article[.]" *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998).  As explained below, many of the statements disputed by Plaintiff constitute protected opinion proffered in the context of an urgent public health debate.

### A.   <u>This Court Cannot Decide Scientific Truth In a Defamation Action</u>.

The crux of Dr. McCullough's allegations is not that the facts published in the Articles are wrong, but that he is somehow defamed because *BEE* reported Dr. Malik's view — representative of the prevailing consensus in the medical and scientific communities — that vaccination is a safe and effective treatment for COVID-19.  The challenged statements criticizing the validity of Dr. McCullough's position that "vaccines are unsafe and ineffective" (Grygiel Dec. ¶ 3, Ex. 1, p. 1) "lack[] the provably false content that is required to support a defamation action."  *Arthur v. Offit*, 2010 WL 883745, at *6 (E.D. Va. Mar. 10, 2010).  Put simply, "as a matter of law, statements of scientific

---

[6]   Whether a statement is opinion protected by the First Amendment is a question of law for the Court. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (*citing Chaves v. Johnson*, 230 Va. 112, 119 (1985)).

conclusions about unsettled matters of scientific debate cannot give rise to liability for damages sounding in defamation." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 492 (2d Cir. 2013). As a result, courts across the country have dismissed lawsuits, even at the 12(b)(6) stage, that are predicated on publications that discuss, or dispute, scientific findings.[7] As the court from the neighboring federal district put it, "determining the falsity of [the defendant's position] would mire the court in a scientific debate of the sort courts are loathe to resolve in defamation actions." *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 528 (W.D. Va. 2019). Indeed, early dismissal of such suits is especially appropriate because such "publications . . . indisputably involve[] . . . matter[s] of substantial public concern — [including, *e.g.*], the safety of vaccines and the risks and benefits of . . . immunization protocols," and therefore "the constitutional and common law protections . . . are at their zenith." *Arthur*, 2010 WL 883745, at *4.

A decision issued four months ago in a closely analogous case is instructive. In *Immanuel v. CNN*, the plaintiff, a physician, alleged that CNN "accused her of 'spreading conspiracy theories on COVID-19' and promot[ing] an 'unproven drug' as an effective treatment option." 2022 U.S. Dist. LEXIS 135903, at *2. The court rejected Dr. Immanuel's claim that she was defamed by CNN's

---

[7]   *See, e.g., Resolute Forest Products, Inc. v. Greenpeace Int'l*, 302 F.Supp.3d 1005, 1021 (N.D. Cal. 2017) ("[t]he academy, and not the courthouse, is the appropriate place to resolve scientific disagreements;" dismissing defamation claims); *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 326 (S.D.N.Y. 2006) (granting motion for dismissal on the pleadings) ("Courts cannot inquire into the validity of scientific works, for any unnecessary intervention by the courts in the complex debate and interplay among the scientists that comprises modern science can only distort and confuse.") (citation omitted); *Oxycal Labs., Inc. v. Jeffers*, 909 F. Supp. 719, 724 (S.D. Cal. 1995) (denying motion for preliminary injunction and holding that "[t]he Court cannot [inquire] into the validity of . . . scientific theories, nor should it") (dispute over scientist's claim that vitamin contained cancer-causing agent). In short, "putting to the pre-existing prejudices of a jury the determination of what is 'true' [in the realm of scientific debate] may effectively institute a system of censorship. Any nation which counts the *Scopes* trial as part of its heritage cannot so readily expose ideas to sanctions on a jury finding of falsity." *Time, Inc. v. Hill*, 385 U.S. 374, 406 (1967) (Harlan, J., concurring in part and dissenting in part).

statements to the effect that "'she peddles disinformation, including harmful medical treatments, and therefore, endangers patients'" (*id*. at *3), and granted CNN's motion to dismiss the complaint:

> Dr. Immanuel alleges that CNN defamed her by covering her statements advocating and promoting [hydroxychloroquine] to treat COVID and by criticizing her views as disinformation supporting harmful medical treatments. Statements of different, even conflicting, opinions, about unsettled matters of scientific or medical treatment that are the subject of ongoing public debate and deep public interest, cannot give rise to defamation claims. ***Courts do not use defamation law to decide or cut short arguments over unsettled questions of what medication best or most safely prevents or treats disease.***

*Id*. at *10 (emphasis supplied) (citations omitted). The same point holds here. Dr. McCullough cannot bring a defamation claim on the basis of *BEE*'s reporting of a local medical expert's opinion about Dr. McCullough's public support of alternative coronavirus treatments that many scientists and governments throughout the world have rejected.

Another good example is this Court's decision in *Arthur v. Offit*, Case No. 09-cv-1398, 2010 WL 883745 (E.D. Va. Mar. 10, 2010). There, the plaintiff sued *Wired Magazine* (even before COVID-19 ignited a national debate about vaccines) over an article that portrayed her "as the anti-vaccine 'movement's brain' and describe[d] her organization as 'the largest, oldest, and most influential of the watchdog groups that oppose universal vaccination.'" *Id*. at *2. The plaintiff argued, as Dr. McCullough argues here, that *Wired* suggested her scientific conclusions were not credible. *Id*. at *6. The Court dismissed the lawsuit on a 12(b)(6) motion, holding that a statement accusing the plaintiff of lying about the effectiveness of vaccines "lacks the provably false content that is required to support a defamation action." *Id*. at *3, *6. As the Court explained, the plaintiff's theory of liability would "ensnare the Court in the thorny and extremely contentious debate over the perceived risks of certain vaccines, their theoretical association with particular diseases or syndromes, and, at bottom, which side of this debate has 'truth' on their side. That is hardly the sort of issue that would be subject to verification based upon a core of objective evidence." *Id*. at *6 (citation omitted). The Court concluded:

> Plaintiff may wish to defend in Court the credibility of her conclusions about the dangers of vaccines, the validity of the evidence she offers in support of those theories, and the policy choices that flow from those views — as well as her own credibility for having advanced those positions. These, however, are academic questions that are not the sort of thing that courts or juries resolve in the context of a defamation action.

*Id.*

Here, as in *Immanuel* and *Arthur*, "scientific controversies must be settled by the methods of science rather than by the methods of litigation." *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994). The allegedly actionable statements are about treatment for a disease that (as of the date of this Motion) has killed more than 1,000,000 Americans and 6,600,000 people worldwide.[8] Disputes over the effectiveness and necessity of COVID-19 treatments (from hydroxychloroquine and masks to ivermectin and monoclonal antibodies) are arguably as heated and contentious as any scientific debate previously known in this country. Yet Dr. McCullough now invites this Court to definitively rule that his thoughts on the "medical response to the COVID-19 crisis" (Compl. ¶ 1) are correct — even though there is plainly no indisputable, objective evidence that can support such a finding. Dr. McCullough bases his claims about the treatment approach he advocates on an article he published in the *American Journal of Medicine* and his purported "academic and clinical experience in combating the SARS-CoV-2 virus," *see* Compl. ¶ 1; *BEE*'s reportage was based on statements by Dr. Malik, an infectious disease specialist "on the frontlines of COVID-19 in Tulsa" (Grygiel Dec. ¶ 3, Ex. 1, p. 2), derived from his own professional experience and numerous other studies showing the exact opposite. *See id.* ("'The World Health Organization, the CDC, the NIH, the European Centre for Disease Prevention and Control'" support vaccination) (quoting Dr. Malik); *id.* ¶ 4, Ex. 2, p.3 ("Malik said of the 3,500 patients

---

[8] *See* Coronavirus in the U.S.: Latest Map and Case Count, N.Y. Times, https://www.nytimes.com/interactive/2021/us/covid-cases.html (last visited December 5, 2022); Coronavirus World Map: Tracking the Global Outbreak, N.Y. Times, https://www.nytimes.com/interactive/2021/world/covid-cases.html (last visited December 5, 2022).

he and colleagues have treated since the pandemic began, 550 have died and more than 95% of them were unvaccinated."); *id*. Ex. 2, p. 2 ("Malik said that all of the large studies point in the same direction — that vaccines work, are safe and help prevent severe infection and death.").  While Dr. Malik insists that the studies he relied on were correct because they involved randomized, controlled trials, and because numerous international public health organizations and federal agencies based their guidance on those same studies, which party's scientific evidence is more reliable is ultimately a question for science, not for the courts.  Indeed, were *BEE* to be held liable for such statements, then so too could any scientist who publicly calls into question a scientific or medical finding.  No one should wish to see "the prospect of defamation liability stifle academic debate and trench upon First Amendment values." *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 236 (5th Cir. 2014).  This Court should reject Dr. McCullough's invitation to do so, and dismiss his claims to the extent the statements at issue challenge the efficacy of the outpatient multi-drug regimen he espouses or criticize his dismissal of vaccination protocols widely credited with stemming the pandemic.

## B.  The Use of Rhetorical Hyperbole and Exaggerated, Figurative Language Signals Protected Opinion.

In addition, liability cannot be imposed because several of the allegedly defamatory statements are "rhetorical hyperbole," words used "in a loose, figurative sense," or "vigorous epithet[s]." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 21 (1990).  Statements characterized as rhetorical hyperbole are those from which "no reasonable inference could be drawn that the individual identified in the statements, as a matter of fact, engaged in the conduct described." *Yeagle v. Collegiate Times*, 255 Va. 293, 296 (1998); *see also Snyder v. Phelps*, 580 F.3d 206, 220 (4th Cir. 2009) (the "general tenor" of rhetorical speech "sufficiently negates an impression that the speaker is asserting actual facts"), *aff'd on other grounds*, 562 U.S. 443 (2011).

Both the context and tenor of the following comments show that they are "actually vigorous and angry expressions of disagreement" reflecting Dr. Malik's disapproval of Dr. McCullough's controversial views on treating COVID-19 patients. *Schnare v. Ziessow*, 104 Fed. Appx. at 851; *see also Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1381-82 (S.D. Fla. 2006) ("Where an issue is controversial, evoking strongly held views, statements relating thereto are more likely to be deemed rhetorical hyperbole."). As such, they are classic examples of emotionally charged rhetoric, and were obviously understood as such:

- The Article includes a statement by Malik . . . that Dr. McCullough's views on vaccine safety and early treatment of COVID-19 are "dangerous to the public and pure quackery." (Compl. ¶ 11; footnote omitted)

- They state that Dr. McCullough is "pathological" and that he was "killing people" in October 2021 by causing them to reman unvaccinated. (*Id.*)

- *BEE* republished a statement by Malik . . . that accused Dr. McCullough of being "a modern-day quack." (*Id*. ¶ 12)

Far from making verifiable factual assertions, the above statements[9] contain the "irreverent and indefinite language" that is the stuff of protected opinion. *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d at 184-85. Their exaggerated tone and moral outrage "alert the reader to the hyperbolic nature of the statements" and "merely serve[ ] as an introduction to the numerous disagreements" between Plaintiff and Dr. Malik as reported in the Articles. *Schnare*, 104 Fed. Appx. at 852. The use of such "lusty and imaginative expression of the contempt" Dr. Malik "felt towards his adversary" concerning the COVID-19 vaccination controversy signals to the reader that what is being expressed is opinionated advocacy, not fact. *Id*. at 852.

---

[9]   In addition, and as discussed below, the First Article's statements alleged to be defamatory in paragraph 11 of the Complaint are not actionable as a matter of constitutional law because they are expressions of opinion accompanied by a recitation of the facts on which they are based. *See* Point V.C., *infra*.

The characterizations of Plaintiff as "pathological" and a "modern-day quack" can only be understood as exaggerated and polemicized criticism that is immunized from a defamation claim as a matter of law.  *Immanuel v. CNN*, 2022 U.S. Dist. LEXIS 135903, at *13-14 ("CNN's statements characterizing those promoting HCQ to treat COVID . . . as peddling 'conspiracy theories' or 'snake oil' are not actionable because they use colorful and rhetorical language"); *Allen v. Beirich*, 2021 U.S. App. LEXIS 20547, at *9 (held, description of plaintiff on "Hate Map" as "'infiltrat[ing]' the City government" along with white supremacists "is non-actionable hyperbole") (citation omitted).  Indeed, the very language in suit has been ruled protected opinion.  *See, e.g., Goldman v. Barrett*, 2016 U.S. Dist. LEXIS 145786, at *11-12 (S.D.N.Y. 2016) (complaint's allegation that website article portrayed plaintiffs as 'quacks' not actionable because implication that plaintiffs "are inferior medical practitioners is a non-actionable statement of opinion; it is merely an 'expression of one's view of another'") (citation omitted) (applying New York law); *Spelson v. CBS, Inc.*, 581 F. Supp. 1195, 1205 (N.D. Ill. 1984) ("the comment that some practitioners use 'tools of the quackery trade' is based upon defendant's opinions") (applying Illinois law).  Similarly, Dr. Malik's contention that Dr. McCullough's misinformation about vaccine safety was "dangerous" and "killing people" is an "expression of outrage" that "merely reflected the . . . belief" that Plaintiff was "morally culpable" for unnecessary deaths during the pandemic, rather than a "literal assertion that [he] committed a felony."  *Schnare*, 104 Fed. Appx. at 852 (citing *Horsley v. Rivera*, 292 F.3d 695, 701-02 (11th Cir. 2002) (statement that plaintiff was an "accomplice to homicide" protected as rhetorical hyperbole)).

### C.  The Complaint Challenges Comments That Are Classic, Nonactionable Expressions of Opinion Based on Disclosed Facts.

Most of the challenged statements also qualify as protected opinion because they are couched in subjective language and their truthful factual bases are disclosed in the Articles in which they appear. Subjective expressions or opinions that do not imply the existence of undisclosed facts and do not

misconstrue the facts are not actionable as defamation. *Biospherics*, 151 F.3d at 184 (citing *Milkovich*, 497 U.S. at 20). This is particularly the case where, as here, in those examples when Dr. Malik accuses Plaintiff of "specific misstatement, he discloses the factual basis for his disagreement, allowing the reader to draw her own conclusion." *Schnare*, 104 Fed. Appx. at 852; *Chapin v. Knight-Ridder*, 993 F.2d at 1093 (when "the bases for the . . . conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related").

The following statements taking issue with Dr. McCullough's "broad campaign against vaccine mandates and the vaccine itself" (Grygiel Dec. ¶ 4, Ex. 2, p. 2) are nonactionable opinion whose factual bases are disclosed. Each of the Complaint's allegations below is followed by those facts — which are *not* alleged to be false — detailed in the Articles as the foundation for the criticism of Dr. McCullough's COVID-19 treatment methods:

- Dr. McCullough's views on vaccine safety and early treatment of COVID-19 are "dangerous to the public and pure quackery." (Compl. ¶ 11; footnote omitted)

The First Article reported Dr. Malik's observation that "'more than six billion doses of all the vaccines combined [were] given in the world, which means that if there was some kind of terrible mortality or safety signal, we would have seen it'" in challenging Plaintiff's position that "vaccines are unsafe and ineffective." (Grygiel Dec. ¶ 3, Ex. 1, p. 1)

- They state that Dr. McCullough is "pathological" and that he was "killing people" in October 2021 by causing them to remain unvaccinated. (Compl. ¶ 11)

The First Article reported that, according to Dr. Malik, "every single government in the world and every single professional medical organization of any repute and standing, and even competing medical publications, supports [*sic*] that the vaccines are safe" and, further, that these organizations concluded "vaccines reduce infections by 85% to 90% and death by 95% to 97%." (Grygiel Dec. ¶ 3, Ex. 1, p. 2) Based on Dr. Malik's own professional experience, the First Article also reported that of the "hundreds" of health care professionals working at Ascension hospitals who had been vaccinated,

23

"not a single one has died or had any major side effect," and that "the majority of people with COVID-19 in the hospital are unvaccinated." (*Id.*)

- Dr. McCullough is "largely discredited by the scientific community for his assertions that the COVID-19 vaccines are unsafe and that early treatment options have been suppressed." (Compl. ¶ 12)

- Dr. McCullough made "multiple claims that are largely uncorroborated [and disproven] by the scientific community." (*Id.*)

The Second Article reported that Dr. Malik "said of the 3,500 patients he and colleagues have treated since the pandemic began, 550 have died and more than 95% of them were unvaccinated." (Grygiel Dec. ¶ 4, Ex. 2, p. 3) It also quoted Dr. Malik's statement that "'none of McCullough's ideas have been supported by any randomized, double-blind, controlled clinical trials'" and pointed out the U.S. Centers for Disease Control and Prevention's position that "the vaccine does provide protection and that research has not proven that having had the virus protects you from having it again." (*Id.* pp. 1-2) Further, the Second Article reported Dr. Malik's observation that "all of the large studies" support that "vaccines work, are safe and help prevent severe infection and death." (*Id.* p. 2)

- Dr. McCullough misstated that "15,937 Americans have died after taking the vaccine." (Compl. ¶ 12)

This statistic was taken from the Vaccine Adverse Event Report System ("VAERS") maintained by the CDC, which states on its website that "a report to VAERS does not mean that a vaccine caused an adverse event." (Grygiel Dec. ¶ 5, Ex. 3) Thus, as Dr. Malik explained in the Second Article, "[t]he FDA requires healthcare providers to report any deaths among people who received the vaccine to VAERS, even if it's unclear that the vaccine was the cause." (*Id.* ¶ 4, Ex. 2, p. 2)

- Gannett and *BEE* falsely opined that there was "likely a good reason" to believe that Dr. McCullough risked losing his "certification" from the American Board of Internal Medicine. (Compl. ¶ 12)

The Second Article reported Dr. McCullough's own acknowledgement that he had received a "threatening letter" from a professional medical licensing board "warning that he could lose his

certification for spreading misinformation," together with the fact that a restraining order had been entered against him for "continuing to claim titles" after his employment was terminated by Baylor. (Grygiel Dec. ¶ 4, Ex. 2, p. 3; *see also* ¶ 7, Ex. 5)  It also reported Dr. Malik's view that Plaintiff "wouldn't be risking losing certification if he had taken the logical path of seeking a grant to launch clinical trials on his drug recommendations for early treatment of COVID-19." (*Id*., Ex. 2, p. 4)

- Dr. McCullough's claims "fail to meet the standard of what is true."
  (Compl. ¶ 12)

Dr. Malik's conclusion in this regard is premised on his explanation in the Second Article in the sentence immediately following the above statement that "'[n]one of [Plaintiff's] suggestions have been submitted to a clinical trial despite the fact that we are 20 months into this pandemic[.]'" (Grygiel Dec. ¶ 4, Ex. 2, p. 4)  Dr. Malik elaborated that a clinical trial "'is considered the standard in establishing the truth all over the world by every professional organization, every government and all science-minded healthcare practitioners[.]'" (*Id*.)  *Biospherics*, 151 F.3d at 186 ("Biospherics does not challenge the factual bases for this conclusion, set forth in the three sentences immediately preceding it").

Accordingly, the Articles made abundantly clear those facts on which the criticism of Dr. McCullough's controversial, out-of-the mainstream rejection of vaccine safety was based.  *Id*. at 185 (held, protected opinion where "the article clearly disclosed the factual bases for its view").  The Complaint does not allege that the supporting facts are false.  "Its failure to do so dooms its challenge" (*Biospherics*, 151 F.3d at 185) to the above statements, which are therefore not actionable as defamation. *Immanuel*, 2022 U.S. Dist. LEXIS 135903, at *13 ("Because the CNN reports are fair comments expressing opinions on matters of grave public concern, and because the reports disclose the factual basis for those opinions, including medical journal articles and statements by the FDA and government officials, the reports are not actionable as defamatory statements about Dr. Immanuel."); *Cheng v.*

*Neumann*, 51 F.4th 438, 447 (1st Cir 2022) (held, statement that defendant "promoted anti-vaccine misinformation" is nonactionable opinion).

## VI.   IN THE ALTERNATIVE, AS A PUBLIC FIGURE, PLAINTIFF WAS REQUIRED − BUT FAILED − PLAUSIBLY TO ALLEGE ACTUAL MALICE

Plaintiff qualifies as a public figure under the First Amendment.  He therefore must plausibly allege facts that, if proven, would demonstrate that *BEE* published the alleged defamatory statements with "actual malice."  The Complaint's factual allegations fail to establish that *BEE* knew the statements Plaintiff disagrees with were false or likely false but proceeded nonetheless to publish them.  Allegations of actual malice that are no more than "pure speculation" and are "supported not by facts but by only conclusory statements" are insufficient grounds to infer actual malice.  *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020).  This deficiency provides a separate and independent basis for this Court to dismiss the Complaint.

### A.   As the Complaint's Allegations Establish, Plaintiff Is a Limited Purpose Public Figure Under the First Amendment.

For purposes of defamation, the First Amendment differentiates private figures from public figures.  In view of our nation's "profound national commitment" to debate on public issues (*N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)), those who have chosen to engage in public endeavors or participate in public debate accept a greater risk of critical public comment and scrutiny.  *Reuber v. Food Chemical News, Inc.*, 925 F.2d 703, 709 (4th Cir. 1991) (*en banc*); *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1292 (D.C. Cir. 1980) ("They thus accept the risk that the press, in fulfilling its role of reporting, analyzing, and commenting on well-known persons and public controversies, will focus on them and, perhaps, cast them in an unfavorable light.").

The U.S. Supreme Court has recognized the categories of "general purpose" and "limited purpose" public figures.  *Gertz v. Robert Welch*, 418 U.S. at 345-46; *Hatfill v. N.Y. Times Co.*, 532 F.3d

312, 318 (4th Cir. 2008).  "General purpose" public figures are those individuals who have achieved such pervasive fame or notoriety that they are deemed to be public figures for all aspects of their lives. *Gertz*, 418 U.S. at 351; *Hatfill*, 532 F.3d at 318.  "Limited purpose" public figures are those who voluntarily inject their view or are otherwise "drawn into a particular public controversy," and are therefore treated as public figures when they sue about statements bearing on that controversy.  *Id.*

In this Circuit, a plaintiff qualifies as a limited purpose public figure if he (1) had access to effective channels of communication; (2) voluntarily assumed a role of special prominence in a public controversy; (3) sought to influence the outcome or resolution of the controversy; (4) the controversy existed prior to publication of the statements at issue; and (5) retained public figure status at the time of publication.  *New Life Ctr., Inc. v. Fessio*, 2000 U.S. App. LEXIS 20894, at *18 (4th Cir. Aug. 16, 2000); *Reuber*, 925 F.2d at 708-10; *Hatfill*, 532 F.3d at 319.  In conducting this analysis, a court must be mindful that the "touchstone" of the public figure analysis "remains . . . whether an individual has 'assumed [a] role[] of especial prominence in the affairs of society . . . [that] invites attention and comment.'"  *Lohrenz v. Donnelly*, 350 F.3d 1272, 1279 (D.C. Cir. 2003) (internal citation omitted).  Applying these elements here, Plaintiff is at least a limited purpose public figure, who has thrust himself into a matter of public controversy.[10]

The determination of Plaintiff's public figure status is a question of law for the Court.  *Carr v. Forbes, Inc.*, 259 F.3d 273, 278 (4th Cir. 2001).  This question of a libel plaintiff's status "is pervasive, and it should be answered as soon as possible."  *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 724 (5th Cir. 1980).  Courts therefore regularly resolve the issue on preliminary motions on the basis of the

---

[10]  The Complaint's allegations demonstrate that Plaintiff is "extraordinarily prominent and pervasively involved in public matters" (*Waldbaum*, 627 F.2d at 1293 n.11) as one of the nation's foremost critics of the safety and efficacy of federal and state government COVID-19 vaccination programs and as an advocate for alternative early treatment options. (Compl. ¶ 1)  As such, he may also qualify as a general purpose public figure under the First Amendment, an argument Defendants expressly reserve.

pleadings. *See, e.g., Besen v. Parents & Friends of Ex-Gays, Inc*., 2012 WL 1440183, at *4-5 (E.D. Va. Apr. 25, 2012) (holding spokesman for non-profit advocacy group a limited purpose public figure on motion to dismiss); *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 140-42 (D.D.C. 2016) (holding Kazakhstani businessman a limited purpose public figure on motion to dismiss).

Dr. McCullough is the paradigmatic example of a limited public figure who has fairly exposed himself to public discussion through his activities.  He has voluntarily, openly, and continuously assumed the self-proclaimed role as "*one of the world's leading experts on COVID-19*."  (Compl. ¶ 1; emphasis supplied)  *Immanuel*, 2022 U.S. Dist. LEXIS 135903, at *14 ("Dr. Immanuel weighed in on controversial issues of public concern — how to medically treat COVID.").  Through his purposeful and prominent work as a "leader in the medical response to COVID-19" (Compl. ¶ 1), he has achieved significant influence over that public health controversy, and is thereby a public figure for purposes of *BEE*'s reporting on his activities in furtherance of those interests.

### 1.   The Articles reported on a pre-existing public controversy.

As a starting point, "it can hardly be debated that the allegedly defamatory statements giving rise to this matter relate to an existing public controversy — that is, 'a real dispute the outcome of which affects the general public or some segment of it in an appreciable way.'"  *Waldbaum*, 627 F.2d at 1296; *see also OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 46-47 (D.D.C. 2005) ("To qualify as a public controversy, the law requires only that the issue be discussed publicly, and that the resolution of the issue affect others besides the immediate participants in the debate.").

As every court to address the issue has held, the global public health crisis caused by the COVID-19 virus, and governmental efforts at both the state and federal level in responding to and combating the pandemic, are matters of paramount public concern.[11]

---

[11]   *See, e.g., Scarborough v. Frederick Cnty.*, 517 F. Supp. 3d 569 (W.D. Va. 2021) (COVID-19 reporting is "speech on matters of public concern" that "falls squarely within the ambit of First Amendment

## 2.   Dr. McCullough played a significant role in that controversy.

The second and third factors have been combined and represent the "heart of our five-factor test." *Carr*, 259 F.3d at 280; *Reuber*, 925 F.2d at 709.  There can similarly be no serious dispute that Dr. McCullough, who assumed a leading role in the national arena by "participat[ing] in scientific congresses, group discussions, and press releases" (Compl. ¶ 1) concerning the COVID-19 pandemic, has voluntarily injected himself into this controversy.  *Immanuel*, 2022 U.S. Dist. LEXIS 135903, at *1 ("The plaintiff in this case, Dr. Stella Immanuel, sought to be a visible public part of that national conversation.").  Dr. McCullough recognizes this himself; the indicia of his public figure status pleaded in the Complaint are overwhelming:

- He published, *Pathophysiological Basis and Rationale for Early Outpatient Treatment of SARS-CoV-2 (COVID-19) Infection*, the first synthesis of sequenced multi-drug treatment of ambulatory patients infected with SARS-CoV-2 in the American Journal of Medicine. (Compl. ¶ 1.)

- He has 46 peer-reviewed publications and has commented extensively on the medical response to the COVID-19 crisis.  (*Id.*)

- On November 19, 2020, Dr. McCullough testified before the United States Senate Committee on Homeland Security and Governmental Affairs.  Throughout 2020 and 2021, he testified before the Texas Senate Committee on Health and Human Services, Colorado General Assembly, New Hampshire Senate, Pennsylvania Senate, and South Carolina Senate concerning many aspects of the pandemic response.  (*Id.*)

- On January 24, 2022, Dr. McCullough co-moderated and testified in the U.S. Senate Panel COVID-19: A Second *Opinion* chaired by Senator Ron Johnson.  (*Id.*)

---

protection"); *Barzilay v. City of New York*, 20-CV-4452 (LJL), 2022 WL 265719, at *16 (S.D.N.Y. July 8, 2022) (speech addressing response to COVID-19 pandemic is a matter of public concern that is of "great interest to the community," "value and concern to the public and of public importance") (internal citation omitted); *Washington League for Increased Transparency & Ethics v. Fox News*, 2021 WL 3910574, at *4 (Wash. Ct. App. Aug. 30, 2021) ("[T]he pandemic, COVID-19, and government responses to this health threat represent legitimate news interests and are a matter of social and political concern to all Americans."); *Geller v. de Blasio*, 2020 WL 2520711, at *3 (S.D.N.Y. May 18, 2020), *app. withdrawn*, 2020 WL 4760303 (2d Cir. June 8, 2020) (classifying COVID-19 pandemic as a matter of public concern); *McLaughlin v. Sullivan Cnty. Bd. of Educ.*, 2021 WL 3744803, at *3 (E.D. Tenn. Aug. 24, 2021) ("the COVID-19 pandemic . . . is unquestionably a matter of public concern").

This recitation confirms that Dr. McCullough is truly a national figure who participated in public debates over the medical response to the COVID-19 crisis.  In doing so, he "voluntarily assumed a role of prominence in the controversy and sought to influence the resolution of the controversy," and is therefore "properly considered a limited-purpose public figure." *New Life Ctr. Inc. v. Fessio*, 2000 U.S. App. LEXIS 20894, at *20 ("New Life presented itself as an expert on evaluating and treating various psychological problems and behavior disorders suffered by priests, with much of its emphasis on sexual problems"); *Immanuel*, 2022 U.S. Dist. LEXIS 135903, at *14-15 ("Because Dr. Immanuel chose to participate in activities that were bound to invite attention and comment, she is a limited purpose public figure."); *Hatfill*, 532 F.3d at 324 ("Throughout his career, Dr. Hatfill was not only repeatedly sought out as an expert on bioterrorism, but was also a vocal critic of the government's unpreparedness for a bioterrorist attack, as evidenced by the topics of his lectures, writings, participation on panels, and interviews."); *Reuber*, 925 F.2d at 710 ("Reuber . . . voluntarily injected himself into the malathion controversy by vigorously promoting his own views and research").

### 3.  Access to Channels of Effective Communication.

There is more.  Dr. McCullough's prominence has afforded him access to government decision makers, various public forums, and the media, which he has used both to criticize the government's response to the pandemic and promote his own agenda.  (Compl. ¶ 1)  His role as an anti-vaccine proponent provided him with access to high echelons of the U.S. government, which he took advantage of in proselytizing his views. The Complaint reflects "an individual knowingly deploying himself on the front-lines of debate," *Reuber*, 925 F.2d at 710, as a partisan of vaccination denialism.

As confirmed by his own allegations, Dr. McCullough is "no stranger to news coverage related to his role" (*Deripaska v. AP*, 282 F. Supp. 3d 133 (D.D.C. 2017)) as a prominent critic of the governmental response to the COVD-19 crisis.  He testified before a U.S. Senate Committee and several state legislative bodies "concerning many aspects of the pandemic response."  (Compl. ¶ 1)  He has

"spoken about his multi-drug regimen on Fox News, and on his McCullough Report podcast, the faith-based Daystar Television Network and other conservative news networks." (Grygiel Dec. ¶ 4, Ex. 2, p. 3) He therefore satisfies the essential attribute of the public figure first identified by the Supreme Court in *Gertz – i.e.*, at all times prior to publication of the Articles, he had unfettered access to the channels of mass communication to campaign against vaccinations and tout his alternative treatment theories. 418 U.S. at 344; *see also Besen*, 2012 WL 1440183, at *5 ("Besen's publications, media appearances, and self-acclaimed ability to impair the opposing campaign demonstrate that, at the time of the events preceding this action, he commanded sufficient continuing public interest and had sufficient access to the means of counterargument to be able to expose through discussion the [purported] falsehood and fallacies of the defamatory statements") (internal quotations and citation omitted). Dr. McCullough's "access to these effective channels of communication make [him] more able than a private individual to refute the defamatory charges, and thus weighs in favor of the conclusion that [he] is a limited purpose public figure." *New Life Ctr.*, 2000 U.S. App. LEXIS 20894, at *19 (footnote omitted).

### 4. Plaintiff's retention of public-figure status.

Finally, the fifth factor is "easily resolved" in this case. *Id.* at *22. As discussed above, the public controversy concerning the pandemic existed prior to the Articles' publication in October of 2021 — by that time, government-sponsored vaccination and booster programs, restrictions on public gatherings, school closures, and non-essential business lockdowns were in effect. *Hatfill*, 532 F.3d at 324 ("The particular public controversy surely existed prior to the publication of the allegedly defamatory statements."). And Dr. McCullough used the ongoing controversy as "a platform from which to intensify his message about national unpreparedness, thus satisfying the final requirement — that he retained public-figure status at the time of the alleged defamation." *Id.* (internal quotations and citation omitted); *Reuber*, 925 F.2d at 710 (defendant "published the alleged defamation at the height of the malathion controversy" and plaintiff's "research was therefore still important to the outcome of

the controversy"); *New Life Ctr.*, 2000 U.S. App. LEXIS 20894, at *22 ("New Life retained its status as a public figure at the time the Article was published, given that New Life continued promoting itself and its services through seminars, advertisements, and newsletters").

Once Dr. McCullough began campaigning against the government as extolled in his Complaint, he properly became a subject of public discussion — and, under the First Amendment, a public figure. In sum, he attained "a position in the limelight" (citation omitted) "through 'purposeful action[s] of his own'" (*Lohrenz*, 350 F.3d at 1280 (quoting *Gertz*, 418 U.S. at 345)), and thereby consented to the "rough competition of the marketplace." *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996). Dr. McCullough is a public figure for purposes of this litigation. It is therefore no surprise that his Complaint concedes his public figure status by attempting (and failing) to plead that *BEE* published the statements to which he objects with actual malice.

### B. Plaintiff Has Not and Cannot Adequately Plead "Actual Malice" As To the Challenged Statements.

To ensure that public-figure libel plaintiffs such as Dr. McCullough do not misuse tort law to retaliate against those who report about legitimate matters of public concern, the U.S. Supreme Court recognized five decades ago in a landmark decision that "erroneous statement is inevitable in free debate, and . . . it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive.'" *Sullivan*, 376 U.S. at 271-72 (quoting *N.A.A.C.P. v. Button*, 371 U.S. 415, 433 (1963)). In carving out the necessary "breathing space" in order that "protected speech is not discouraged," *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989), the *Sullivan* court established the "actual malice" standard. 376 U.S. at 279-80. This standard, which protects "uninhibited, robust, and wide-open" debate on public issues, requires proof that a libel defendant published a false statement with knowledge that it was false, or with reckless disregard as to its truth or

falsity (the "constitutional malice" standard).[12]  *Sullivan*, 376 U.S. at 270; *Carr*, 259 F.3d at 282-83.  It reflects that those, such as Plaintiff, who have chosen to participate in public debate, necessarily accept a greater risk of critical public scrutiny and commentary.  *Lohrenz*, 350 F.3d at 1278-79.

Because he qualifies as a limited purpose public figure, Plaintiff must plausibly allege that the challenged statements were published with "actual malice."[13]  *Mayfield v. NASCAR*, 674 F.3d 369, 378 (4th Cir. 2012).  The weakness of Plaintiff's actual malice claim is underscored by the few examples alleged in the Complaint, with no specific facts tethered to the alleged defamation.  At the pleading stage, a public figure must "plead plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice."  *Biro v. Condé Nast*, 807 F.3d 541, 546 (quoting *Twombly*, 550 U.S. at 556) (alterations and internal marks omitted).  Plaintiff has failed to do so.

As the Fourth Circuit has observed, "establishing actual malice is no easy task, because the defamation plaintiff bears the burden of proof by clear and convincing evidence."  *CACI Premier Tech.*, 536 F.3d at 293 (quoting *Carr*, 259 F.3d at 282); *see also Ryan v. Brooks*, 634 F.2d 726, 733 (4th Cir. 1980) ("[T]he *New York Times* standard is a difficult one for libel plaintiffs to meet, and [] its application may sometimes produce harsh results.").  It is met only with evidence that, at the time of publication, the defendant "realized that his statement was false or that he subjectively entertained serious doubt as

---

[12]   Reckless disregard" has been specifically defined by the U.S. Supreme Court as publishing while actually entertaining "serious doubts as to the truth of publication," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or while subjectively possessing a "high degree of awareness of [the] probable falsity" of the publication. *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).

[13]   Since *Iqbal* and *Twombly*, every Circuit to have considered the issue has held that the requisite pleading of actual malice is subject to the same Rule 8 plausibility standard announced in those cases. *See, e.g., Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018); *Biro v. Condé Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2015 (2016); *Pippen v NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *McDonald v. Wise*, 769 F.3d 1202, 1219-20 (10th Cir. 2014); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

to the truth of his statement." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n.30 (1984).  The test is entirely a subjective one, and proof of negligence alone is insufficient.  *Sullivan*, 376 U.S. at 279-80; *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 45 (D.D.C. 2002) ("The standard for actual malice is not what a 'reasonable person' or a 'prudent publisher' would do, nor can it be defined as 'an extreme departure from professional standards.'") (citations omitted), *aff'd*, 350 F.3d 1272 (2003).

Applying the above principles "in cases where a defamation claim requires a showing of actual malice, courts in the Eastern District of Virginia have found that 'conclusory allegations regarding the [defendants'] intent . . . are insufficient to survive a motion to dismiss.'"  *Hanks v. WAVY Broad., LLC*, 2012 WL 405065, at *12 (E.D. Va. Feb. 8, 2012) (quoting *Zhang v. Regan*, 2011 WL 1456188, at *8 (E.D. Va. Apr. 14, 2011)).  Because the Complaint merely recites unadorned legal conclusions, Plaintiff has failed to meet his pleading burden.

### 1. The Complaint's conclusory allegations are insufficient to demonstrate actual malice.

Plaintiff has not even attempted in his Complaint to allege facts that, accepted as true, could support a jury finding that *BEE* deliberately published a falsehood about him in the Articles.  *Besen*, 2012 WL 1440183, at *7 ("the dearth of *any* factual allegations demonstrating malice renders Plaintiff's claims unsustainable as a matter of law") (emphasis in original); *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218-19 (D.D.C. 2012) (granting Rule 12(b)(6) motion to dismiss where "complaint contain[ed] *no* factual allegations" to support actual malice claim) (emphasis in original).

The Complaint's assertions of actual malice do not satisfy Plaintiff's pleading burden because they are pure legal conclusions.[14]  Here, Plaintiff simply recites the bare, conclusory allegation that the

---

[14]  *Twombly* and *Iqbal* make clear that a court's obligation to accept as true all of the factual allegations pleaded in a Complaint does *not* apply to legal conclusions. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

statements at issue were published with "actual knowledge that they were false or with reckless disregard for whether they were false." (Compl. ¶ 20) "This kind of conclusory allegation — a mere recitation of the legal standard — is precisely the sort of allegation[] that *Twombly* and *Iqbal* rejected." *Mayfield*, 674 F.3d at 378.

### 2.   "Inherently improbable."

The Complaint's allegation that Plaintiff's "credentials and stature in the medical community" demonstrate that the challenged statements were "inherently improbable" is unavailing. (Compl. ¶ 20a.) The same argument was recently rejected in *Prince v. The Intercept*, 2022 U.S. Dist. LEXIS 183551 (S.D.N.Y. Oct. 6, 2022), where the plaintiff, a well-known American businessman who founded the private military contractor Blackwater, alleged he was defamed by an article reporting that he offered his services to a Russian entity. *Id.* at *2, *3-4. As the *Prince* court explained, the plaintiff's claim that his background as a Navy SEAL who had advised several U.S. Presidents failed to establish the inherent improbability of the statement:

> [D]espite drawing inferences in Plaintiff's favor, the Court finds Plaintiff's general contention — that as "a former Navy SEAL who earned the trust and confidences of multiple U.S. Presidents" it is "inherently improbable" that he would offer military services to a sanctioned Russian entity — to be conclusory . . . The Court agrees with Defendants that Plaintiff's professional background does not make the Article's allegations "inherently improbable" because it would not be a contradiction for Defendants' allegations to be true.

*Id.* at *38 (granting motion to dismiss defamation complaint); *see also Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576 (2016) (plaintiff's close relationship with politician not sufficient to demonstrate that support for politician's adversary was "inherently improbable").

The same reasoning controls here, and confirms that Plaintiff's conclusory status-based contention is legally insufficient to demonstrate actual malice.

### 3.   Contradicted by other source materials.

Plaintiff next attempts to prop up his actual malice claim by alleging that the statements he disputes are "directly contradicted by peer-review studies and published research" in *BEE*'s possession (Compl. ¶ 20b.) — without identifying what those materials are, let alone what they say.  *Immanuel*, 2022 U.S. Dist. LEXIS 135903, at *15 ("Dr. Immanuel does not point to the prior reporting she relies on.").  In any event, this allegation cannot salvage the Complaint.  According to longstanding First Amendment principles, the publication of information contradicted by another source does not amount to actual malice.  *Liberty Lobby, Inc. v. Anderson*, 1991 WL 186998, *8 (D.D.C. May 1, 1991) ("[D]efendants' knowledge of the existence of a contradictory source, without more, does not constitute clear and convincing evidence of actual malice").  "There is no basis to infer" *BEE* believed that, contrary to Dr. Malik's criticisms of Plaintiff's medical theories, dispensing with governmental vaccination programs "was a safe and effective approach to COVID."  *Immanuel*, 2022 U.S. Dist. LEXIS 135903, at *15-16.

As another judge of this Court has previously made clear, "if the sources of the fodder for the defamatory statements appeared reliable and defendant did not seriously doubt the veracity of the information, the actual malice standard would not be satisfied." *Hatfill v. N.Y. Times Co.*, 488 F. Supp. 2d 522, 531 (E.D. Va. 2007), *aff'd*, 532 F.3d 312 (4th Cir. 2008).The Articles reported information and viewpoints from Dr. Malik, an infectious disease specialist who has treated thousands of COVID-19 patients in Tulsa, that criticized and refuted Dr. McCullough's positions.   Other than his own disagreement, Plaintiff has failed to plead any facts that cast the information provided by Dr. Malik as unreliable, or that establish his lack of credibility as a source.  *Hatfill*, 532 F.3d at 325 ("Given Dr. Rosenberg's background, there is no reason that [reporter's] reliance on her statements constitutes actual malice, even given the expressed disagreement of others with regard to her opinions."); *Preston v. City*

*Council of Petersburg*, 2021 U.S. Dist. LEXIS 58519, at *26-27 (E.D. Va. Mar. 26, 2021) (held, no actual malice where reporter "had [no] reason to doubt" what sources told him).

Nor are there any facts in the Complaint to support the outrageous allegation that *BEE* "fabricated the statements and made up facts out of whole cloth." (Compl. ¶ 20b.) Plaintiff does not — and cannot — allege that either he or Dr. Malik did not say what they said, that the statements attributed to them in the Articles are inaccurate, or that the statements complained of were unsourced. *Immanuel*, 2022 U.S. Dist. LEXIS 135903, at *15 ("The record makes this allegation implausible because CNN used so many of [plaintiff's] own words, from her speech and from the sermons she posted to her YouTube page."). There is nothing pleaded that would support the outlandish notion that *BEE*'s reporting was fictionalized or a product of the reporter's imagination. *See, e.g., Preston*, 2021 U.S. Dist. LEXIS 58519, at *27 ("the fact that [reporter] could have spoken with additional or different sources does not mean he 'completely' fabricated a story"). The only thing fabricated here is Plaintiff's claim that the statements he disagrees with were fabricated.

### 4.    "Institutional bias."

The Complaint's unsupported assertion that "bias and prejudice" (Compl. ¶ 20c.) motivated *BEE*'s publication of the challenged statements is entirely insufficient as a plausible basis for actual malice. *Franchini v. Bangor Publ'g Co.*, 2020 WL 1879012, at *4 (D. Me. Apr. 15, 2020) ("[A] bare assertion of bias, without further facts demonstrating that the alleged bias was accompanied by knowledge of or reckless disregard for falsehood, has little purchase in the actual malice assessment[.]").

While it is far from clear why a community newspaper would harbor "institutional hostility, hatred, extreme bias, spite and ill-will" (Compl. ¶ 20c.) concerning Plaintiff, it is settled law that none of these is sufficient to constitute actual malice. *Brimelow v. N.Y. Times Co.*, 2021 U.S. App. LEXIS 31672, at *10 (2d Cir. Oct. 21, 2021) (affirming dismissal of complaint that "alleged ill will toward

[plaintiff] harbored by" the defendant as "provid[ing] no basis for plausibly inferring that [defendant] had any doubts about the truth of its statements"). As the D.C. Circuit has recognized, the "mere presence of some ulterior motive," including even a "personal desire to harm" the plaintiff, "is not enough to support a finding of actual malice." *Jankovic*, 822 F.3d at 596.

### 5.   Professional standards and ethics (negligence).

The bombastic allegation that *BEE* "intentionally abandoned all journalistic standards" in publishing the statements complained of fares no better. (Compl. ¶ 20d.) Plaintiff alleges no *facts* whatsoever in support of this claim. Compounding this deficiency, Dr. McCullough's "displeasure over the manner in which the story was investigated simply cannot be equated with evidence of actual malice." *New Life Ctr.*, 2000 U.S. App. LEXIS 20894, at *26. The First Amendment requires that a "public figure plaintiff must prove more than an extreme departure from professional standards" to establish the requisite constitutional fault. *Harte-Hanks Commc'ns*, 491 U.S. at 665.

The Fourth Circuit has ruled that a trial court's instruction informing the jury that "reckless disregard may be established by showing a departure from accepted journalistic practices" is constitutional error. *Reuber*, 925 F.3d at 711-12; *see also Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993) ("*Reuber* made it clear that actual malice cannot be established merely by showing a departure from accepted journalistic or professional practices."). The Complaint's allegations flout this rule of law.

### 6.   Failure to contact Plaintiff.

Plaintiff's claim that *BEE* did not afford him an opportunity to comment (Compl. ¶ 20d.) is refuted by the Second Article, which conveyed his point of view by extensively reporting his remarks to the Bartlesville Community Center audience, even pointing out that they resulted in "standing ovations during [his] presentation[.]" (Grygiel Dec. ¶ 4, Ex. 2, p. 1) This "tends to rebut a claim of malice, not to establish one." *Lohrenz*, 350 F.3d at 1286. In any event, it is hornbook constitutional

law that a pre-publication failure to contact the subject of a news article does not support actual malice. *D.A.R.E. America v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1284 n.3 (C.D. Cal. 2000) ("Plaintiff's suggestion that Defendants failed to contact [plaintiff] before publishing [the] article evidences actual malice is . . . legally misguided.  Defendants were not required to contact the subjects of the article before publication"), *aff'd*, 270 F.3d 793 (9th Cir. 2001); *Fairfax v. CBS Broad.*, 534 F. Supp. 3d 581, 596 (E.D. Va. 2020) ("Nor can the court find any obligation on the part of CBS, legal or otherwise, to disclose to [plaintiff] in advance of the broadcasts the fact or substance of the interviews, as [plaintiff] insists CBS should have.").

Far from a "sure sign" (Compl. ¶ 20d.) of actual malice, this allegation is of no moment.

## VII.   IN THE ALTERNATIVE, DEFENDANTS ARE IMMUNIZED FROM LIABILITY FOR DEFAMATION UNDER VIRGINIA'S ANTI-SLAPP STATUTE

Virginia's anti-SLAPP statute provides immunity to those exercising their right to speak on matters of public concern in circumstances like those presented here:

> A.   A person shall be immune from civil liability for . . . a claim of defamation based solely on statements . . . regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party . . ..  The immunity provided by this section shall not apply to any statements made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false.

Va. Code § 8.01-223.2(A) (2020).  The statute reflects the General Assembly's strong support for free speech on matters of public concern.  It also reflects the sound public policy that the courts should dismiss baseless lawsuits attacking freedom of expression — such as this one — swiftly.

It is beyond question that the Articles at issue relate to a "matter of public concern" and were communicated to third parties.  For the reasons set forth above in Points IV-VI, the statements Plaintiff disputes are protected by the First Amendment.  Defendants are therefore immune from liability at the outset unless Dr. McCullough has alleged facts that, if proven, would establish publication "with actual or constructive knowledge that they are false or with reckless disregard for whether they are false," Va.

Code § 8.01-223.2(A) — that is, unless Plaintiff has adequately pleaded "actual malice." *Sullivan*, 376 U.S. at 280 (defining "actual malice" as publishing with "knowledge that [the publication] was false or with reckless disregard of whether it was false or not")  For the reasons stated in Point VI.B. 1-6 above, Plaintiff has failed to plead a single purported fact demonstrating that *BEE* published the Articles with actual malice.  Nor does the Complaint allege anything that would indicate Gannett can be found liable for the content of the Articles published by an indirect subsidiary, let alone anything that would support a finding that Gannett published the Articles with actual malice.  *AdvanFort Co. v. The Mar. Exec., LLC*, 2015 U.S. Dist. LEXIS 99208, at *16 (E.D. Va July 28, 2015) ("it is well established that actual malice must be proved with respect to *each* defendant" (emphasis in original)).

Dr. McCullough has failed to and cannot adequately plead actual malice.  Therefore, Defendants are also immune from his defamation claim pursuant to Section 223.2, and the Court should dismiss the Complaint for this additional and independent substantive reason.[15]

## CONCLUSION

Based on the foregoing reasons and authority, Defendants Gannett Co., Inc. and the *Bartlesville Examiner-Enterprise* respectfully request that the Court issue an order dismissing the Complaint in its entirety and with prejudice, together with such other and further relief as to the Court may seem just and proper.

Dated: December 9, 2022,                Respectfully submitted,
      McLean, Virginia

by:       /s/ Shirin Afsous
     Shirin Afsous (VSB No. 89999)
     GREENBERG TRAURIG, LLP
     1750 Tysons Boulevard, Suite 1000
     McLean, VA 22102
     Tel: (703) 749-1300

---

[15]  If the Court does not dismiss *BEE* for lack of personal jurisdiction and/or Gannett as an improper party defendant, Defendants have filed a separate motion for an award of their attorney's fees under the statute.  Va. Code § 8.01-223.2(B).

Fax: (703) 749-1301
Email: afsoussh@gtlaw.com

Michael A. Pusateri (*pro hac vice forthcoming*)
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington DC 20037
Tel: (202) 331-3100
Fax: (202) 331-3101
pusaterim@gtlaw.com

Michael J. Grygiel (*pro hac vice forthcoming*)
Cynthia E. Neidl (*pro hac vice forthcoming*)
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, NY 12207
Tel: (518) 689-1400
Fax: (518) 689-1499
Email: grygielm@gtlaw.com
        neidlc@gtlaw.com


*Counsel for Defendants Gannett Co., Inc., and
Bartlesville Examiner-Enterprise (a non-juridical
entity)*